## No. 22,754.

F. M. JOHNSON et al., *Appellants,* v. JAMES HAY, *Appellee and Appellant,* and THE BELLEVILLE STATE BANK, *Appellee.*

### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Part of Assets of Bank—Former Stockholders Had No Interest Therein.* Among the assets of a state bank was a promissory note that was uncollectible, and it was charged to the profit and loss account, under an agreement among the stockholders to consider the note as a dividend, and if it were ever collected, the proceeds should belong to them. Subsequently they sold their stock, and long afterwards, claiming to own the note, brought suit thereon against the maker. Their evidence showed that no dividend was, in fact, declared, and that none could have been lawfully declared at the time of the transaction under which they claim, and also that they never paid anything to the bank to take up the loss occasioned by the note. *Held,* that the note was part of the assets of the bank, and that the former stockholders had no interest therein.

2. ISSUES—*Between Codefendants—Codefendant May Have Attachment Against Property of His Codefendant.* Where one who is joined as a defendant files a cross petition against his codefendant, his relation to the latter is that of a plaintiff, and he is entitled, on proper showing, to have an attachment issued against the property of his codefendant.

3. TRIAL—*No Error in Record.* Various complaints of error raised by the defendant (maker of the note), *held* to be without merit.

Johnson v. Hay.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed June 5, 1920. Affirmed.

*W. D. Vance,* and *R. E. McTaggart,* both of Belleville, for the appellants.

*E. S. Nelson, Nelson J. Ward,* and *John F. McClure,* all of Belleville, for appellee and appellant James Hay; and *W. J. Moss,* of Fairbury, Neb., for appellee the Belleville State Bank.

The opinion of the court was delivered by

PORTER, J.: On July 26, 1901, the defendant, James Hay, borrowed $300 from the Belleville State Bank, for which he gave his ninety-day note secured by a chattel mortgage on live stock. A few days afterward he absconded, left the state, and did not return until 1917, about the time of the death of his mother, from whom he inherited an interest in property. The plaintiffs, who were stockholders of the bank in 1901, claimed they owned the note, and brought this action against Hay to recover the amount due thereon. The bank was joined as a defendant, and filed its cross petition, setting up its ownership of the note, and asking judgment against Hay. At the same time it procured an attachment which was levied upon Hay's property. The affidavit for the attachment alleged that Hay procured the loan by false and fraudulent representations to the effect that the property included in the chattel mortgage belonged to him and was free and clear of encumbrance, when, in fact, it was covered by mortgages held by other banks. The trial resulted in a judgment in favor of the bank against plaintiffs for costs, and against the defendant for the amount of the note and sustaining the attachment. The plaintiffs bring the case here for review, and the defendant has also filed notice of a cross appeal.

1. Plaintiffs claim that when the note was executed, the stock of the Belleville State Bank was owned by E. L. Johnson, F. M. Johnson, Oliver Johnson, R. T. Stanfield, and J. R. Caldwell, none of whom had much banking experience; that when it was discovered that the note could not be collected and that it was necessary to charge it off the books and place it in the profit and loss account, the stockholders conceived the notion that by considering the note as a dividend, each stockholder would take his proportionate share of the note in the event it

was ever collected. It was shown that no dividend was actually declared, and that the bank was in no condition to declare a dividend, but the note was taken out of the "note case," where live assets were kept, and was placed in an envelope, marked, "James Hay note, charged off."

The plaintiffs' evidence showed that on October 7, 1901, the stockholders of the bank had a meeting in which they authorized the following entry upon the minute book of the bank: "Loss on Securities, $300 James Hay note." E. L. Johnson testified that he was one of three stockholders who had active management of the bank, and at the meeting they talked over whether they would put up the money as individuals or would charge the note to the earnings account and make a dividend of it, and decided to let the earnings of the bank take care of the note; that there was no money in the earnings account at that time, and the note was not actually charged to that account until November 4, 1901, at which time there was in the earnings account the sum of $230.49; and that as a result the account was overdrawn, and the balance was taken care of by subsequent accumulations and earnings.

In 1912 plaintiffs sold their stock to Luther Bonham, and they claim that he made an oral agreement with them that out of the assets of the bank which were to be delivered to the purchaser, the James Hay note was to be excepted. One of the plaintiffs testified in substance that in the sale of the stock he said to Mr. Bonham, "Here is the note that we want to keep out; it belongs to the stockholders. . . . This note was charged off from the assets of the bank and turned over to the stockholders, and they appointed me as custodian of the note for the reason that sometime in the future we expected this note to be valuable to us," and that Bonham said, "All right." This was contradicted by Bonham, who testified that he never saw the note, and that no reservation of it was made in the sale; that the note was not considered and did not appear on the register of the bank; and that the matter of charged-off paper was not discussed.

Even without the testimony of Bonham, in our opinion, the trial court rightly directed the jury to return a verdict against the plaintiffs. The petition does not allege, nor does the evidence show, that the plaintiffs purchased the note or paid for it, or that it was actually declared as a dividend out of the as-

sets of the bank. Besides, the statute provides that before a dividend can be declared ten per cent of the profits must be carried to the surplus fund (Gen. Stat. 1915, § 551), and there is the further provision that:

"No bank officer or director thereof shall, during the time it shall continue its banking operations, withdraw or permit to be withdrawn, either in form of dividends or otherwise, any portion of its capital. If losses have at any time been sustained by such bank equal to or exceeding its undivided profits then on hand, no dividend shall be made, and no dividend be declared by any bank while it continues its banking business to any amount greater than its net profits on hand, deducting therefrom its losses, to be ascertained by a careful estimate of the actual cash value of all its assets at the time of making such dividend; the present worth of all maturing paper shall be estimated at the usual discount rate of the bank." (Gen. Stat. 1915, § 553.)

Plaintiffs' evidence not only established the fact that they had no right to or ownership in the note, but that it was the property of the bank. No dividend was, in fact, declared; and none could have been lawfully declared at the time of the transaction under which plaintiffs claim. Of course, the mere fact that plaintiffs in their talk at the time the note was charged off considered the transaction as making a dividend of the note ought not to be controlling. If they had assessed themselves or in some way put up the money to meet the loss the bank had sustained, the fact that they concluded to regard the note as a dividend might not of itself prevent them from claiming ownership of the note. But they do not claim to have paid a dollar to the bank to take up the loss occasioned by the note. Their claim is that by an arrangement among themselves the note was charged to the earnings account, to be subsequently taken care of by future earnings. Of course, the future, as well as past, earnings of the bank would belong to the bank, and not to the stockholders. A corporation exists as an entity separate and apart from the shareholders. (*Bank v. Milling Co.*, 101 Kan, 446, 167 Pac. 1036, and authorities cited.) When plaintiffs disposed of their shares in the bank they could not lawfully carry away with them any property belonging to the bank, and this note, regardless of its value at the time, was an asset of the bank the same as all other notes and property carried in the profit and loss account of the bank.

2. The defendant, James Hay, has served notice of a cross appeal. He is satisfied with the decision holding that the

plaintiffs have no right to recover, but complains of the ruling directing a verdict against him in favor of the bank. His claims of error hardly rise to the dignity of serious contentions. It is insisted that the bank offered no evidence in support of its cross petition, and no testimony to prove its ownership of the note, and therefore there was no evidence to sustain a judgment against him; and attention is called to the fact that both the defendant, Hay, and the bank, objected to plaintiffs' testimony, and demurred to it when plaintiffs rested. But plaintiffs' evidence established the fact that the note, which was given to the bank in the first place, still belonged to it, and that it had never been paid. Merely because one of the plaintiffs testified that a notation on one of the books of the bank indicated, in his opinion, that the note had been paid in some manner was no evidence of payment, especially in the face of the undisputed evidence that the note never had been paid. The bank introduced evidence to contradict that of the plaintiffs with reference to what occurred at the time of the purchase of the bank's stock by Bonham, and it was not necessary for it to offer testimony to prove facts which the plaintiffs' evidence had established.

Because the provisions of the code authorize the plaintiff, in certain cases, to have an attachment against the property of the defendant, it is seriously urged that the bank, being a defendant, could not procure an attachment against a codefendant. Although named as a defendant in the action, the bank occupied the position of a plaintiff in its cross action against Hay, and was entitled to procure an attachment the same as if the action had been brought originally by it as plaintiff. It was not necessary for the bank to offer evidence on its own behalf to sustain its attachment, because plaintiffs' evidence showed that when Hay obtained the loan from the bank he falsely represented that certain personal property belonging to him was free and clear of incumbrances, while, in fact, it was covered by mortgages to another bank. There was abundant evidence to sustain the attachment on the ground of fraud.

The question of the statute of limitations was one of law and not of fact, when it appeared beyond any dispute that the defendant's absence from the state tolled the statute.

The judgment is affirmed.