THE GRAND DE TOUR PLOW COMPANY v. RUDE
BROTHERS MANUFACTURING COMPANY.

**No. 10987.**

1. PRACTICE, SUPREME COURT—*Parties—Receiver.*  A receiver appointed to take possession of property involved in the litigation during the pendency of the suit, who does not stand as the representative of any of the parties nor file any pleadings in the case, is a mere stakeholder, and is not a necessary or proper party in a proceeding in error brought to review the judgment of the trial court.

2. CORPORATION—*Right to Prefer Creditors.*  In the absence of charter or statutory restrictions, and in the absence of actual fraud, a corporation, though insolvent, and though it has ceased, or determined to cease, doing business, may prefer certain creditors over others, whenever a natural person could do so.

Error from Sedgwick district court; D. M. DALE, judge.  Opinion filed January 7, 1899.  Reversed.

*Stanley, Vermilion & Evans,* and *Morrison & Bethea,* for plaintiff in error.

*J. V. Daugherty, J. D. Huston,* and *Adams & Adams,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.:  This is a controversy between the preferred and unpreferred creditors of the Wichita Implement Company, a corporation which had been in a failing condition for some time prior to November 21, 1895.  On that day the corporation preferred one of its creditors, the Grand De Tour Plow Company, by mortgaging and transferring to that company a considerable part of its property and assets; and at the same time some other creditors were in like manner preferred.  In this proceeding the unpreferred creditors challenged the validity of the mortgage and

10—60 KAN.

the transfer that was made to the Grand De Tour Plow Company, and asked for an accounting by that company of the property so mortgaged and transferred to it.   The officers of the Wichita Implement Company realized the failing condition of the corporation and its inability to meet its obligations, and on November 16, 1895, a representative of the company visited the Grand De Tour Plow Company for the purpose of obtaining an extension of time, knowing that unless an extension was granted it could no longer carry on its business.   The extension was refused, and on November 21, 1895, the mortgage in question was executed, and the transfer of the property and assets was made to the Grand De Tour Plow Company.   After the transfer was made, the Wichita Implement Company actually quit and went out of business, and has never since resumed.

The trial court set aside the chattel mortgage and other conveyances made by the implement company to the Grand De Tour Plow Company, holding that an insolvent corporation has no power, while in such condition, to transfer its property, or any part thereof, to one or more creditors to secure them, to the exclusion of others.

After the action was begun, the court, upon the application of the defendants in error, appointed a receiver to take possession of the property the transfer of which was sought to be set aside, and it is now contended that this proceeding should be dismissed because the receiver has not been made a party hereto. The receiver was not a party to the suit in any sense, and his name did not appear in any of the pleadings. He was not appointed as the representative of the insolvent corporation with authority to take possession of all its property and to carry on and conclude its business, but was a mere stakeholder, to keep posses-

sion of the property during the pendency of the litiga-
tion, and to distribute and dispose of it as the judgment
of the court might direct. The assets placed in his
custody were only a fraction of the property of the in-
solvent corporation, and, instead of standing as its
representative, he was, rather, an officer of the court,
entrusted with the possession of the property during
the pendency of the suit, in which he had no interest
whatever. Having no interest in the property, nor
any standing in the case as a party, he had no right
to appeal or to prosecute proceedings in error, and it
was not necessary or proper to make him a party in
this proceeding.

On the merits, the question presented is whether
an insolvent corporation, which has made an unsuc-
cessful attempt to obtain further extension of credit
and has determined to quit business, may prefer one
or more of its creditors. Although there is a diver-
sity of opinion upon the question, the great weight of
authority is that a corporation has the same power
to make preferences among its creditors that a part-
nership or an individual has. Most of the courts
which deny the right to prefer do so upon the theory
that the assets of an insolvent corporation constitute
a trust fund which must be applied *pro rata* to the
payment of all its creditors. Insolvency alone, how-
ever, does not operate as a dissolution of the corpora-
tion, nor does it create a specific lien or direct trust
in the corporate assets in favor of the creditors. The
trust-fund doctrine has no place in the common law,
and the greater number of the courts which have
given the subject consideration, as well as the reason
of the law, unite in rejecting its application. It is
true that the property of an insolvent corporation has
been sometimes referred to in this and other courts
as a trust fund, but it was never intended by these

expressions that by reason of insolvency alone the corporation lost the right to control and dispose of the property, or that it then became impressed with a trust. In *Gould v. Railway Co.*, 52 Fed. 680, Judge Caldwell, in speaking of the effect of insolvency, said:

"It is undoubtedly true that the property of corporations is, in one sense, a trust fund for the payment of its debts; but this rule means no more than that the property of a corporation cannot be distributed among its stockholders or applied to any purpose foreign to the legitimate business of the corporation, until its debts are paid. The rule, so far as it relates to the payment of debts, is satisfied whenever the property of a corporation is applied to the payment of any of its *bona fide* debts. The rule, as has been often pointed out, does not prevent a corporation, whether solvent or insolvent, from making preferences among its creditors, and exercising in good faith absolute dominion over its property, in the conduct of its legitimate corporate business, so long as its right to do so is not restrained by statute or by judicial proceedings."

On the same subject, the supreme court of the United States held that it was a trust fund only in the sense that the property of the corporation must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders, and not that the property is so affected by the indebtedness of the company that it cannot be sold, transferred or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. (*Fogg v. Blair*, 133 U. S. 534, 10 Sup. Ct. 338.)

In *Hollins v. Brierfield Coal and Iron Co.*, 150 U. S. 371, 14 Sup. Ct. 127, Mr. Justice Brewer, in speaking of the limited sense in which the property of a corporation is spoken of as a trust fund, said:

"The same idea of equitable lien and trust exists to

some extent in the case of partnership property. Whenever, a partnership becoming insolvent, a court of equity takes possession of its property, it recognizes the fact that in equity the partnership creditors have a right to payment out of those funds in preference to individual creditors, as well as superior to any claims of the partners themselves. And the partnership property is, therefore, sometimes said, not inaptly, to be held in trust for the partnership creditors, or, that they have an equitable lien on such property. Yet all that is meant by such expressions is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party and in a proper proceeding, has taken possession of the assets. It is never understood that there is a specific lien or a direct trust.''

Until the assets are properly brought within the jurisdiction of a court of equity the dominion and control of the same remain in the corporation, and it may make any honest disposition of them. In the absence of statutory restrictions a corporation has the same control and power of disposition of its property that a natural person has, and an insolvent corporation has the power and right to prefer its creditors in the same way and under the same circumstances as an insolvent individual might do. Nothing in our statute affords any ground for a distinction between natural and artificial persons, as appears to be the case in some of the states where the right of preference is denied. A good deal may be said in opposition to the policy of allowing even a natural person when insolvent to make a preference among his creditors, but that common-law doctrine is firmly established in the jurisprudence of this state, and no good reason has been given for excepting an artificial person or corporation from its operation.

The right of an insolvent corporation to make such

preference has received much consideration and elaborate treatment by the courts and law writers, and a multitude of cases bearing upon the subject have been cited; but a review of them is not practicable or necessary. We deem it sufficient to call attention to 7 American and English Encyclopedia of Law (2d ed.), 742, where the authorities are collected, from which the author deduces the well-established doctrine that "in the absence of charter or statutory restrictions, and in the absence of actual fraud, every corporation, though insolvent, and though it has ceased, or determined to cease, doing business, may prefer certain creditors over others whenever a natural person could do so." In *Hays v. Citizens' Bank*, 51 Kan. 535, 33 Pac. 318, it was held that the directors and managers of a corporation, who were creditors of the same, could not prefer themselves, leaving the question undecided as to whether other creditors might be preferred. The ground of that decision is that the directors are the agents of the stockholders and creditors, and that their interests as creditors would be inimical to their duties as agents. They occupy a fiduciary relation to the creditors and stockholders and may not take advantage of their superior information and opportunity to gain an advantage over those whose interests they are guarding; nor are they permitted to contract with themselves as they may with third parties. The determination that they could not put themselves in a position antagonistic to those for whom they were acting is no recognition of the trust-fund theory.

The judgment will be reversed and the cause remanded with directions to enter judgment upon the agreed facts in favor of the plaintiff in error.