No. 21,334.

THE LASALLE STREET TRUST & SAVINGS BANK, of Chicago, Ill., et al., *Appellees*, v. THE TOPEKA MILLING COMPANY, *Appellee* (DAPHNE S. SHEPARD, Intervenor, *Appellant*).

#### SYLLABUS BY THE COURT.

1. CORPORATION — *Stockholder as Creditor.*— *When Entitled to Share Equally With Other Creditors.* When a stockholder has satisfied all his obligations as such, and there remains nothing by way of unpaid subscription or liability growing out of his relation as stockholder, and he is in good faith a creditor of the corporation, he stands on an equal footing with other creditors and has the same right to treat the corporation·as a stranger and adversary as they have. Under such circumstances he is not required to stand back until other creditors are satisfied, but may proceed along with them on equal terms.

2. SAME. Under all the facts and circumstances shown by the record it is held that the intervenor should be permitted to share equally with the plaintiffs in the proceeds of the corporate property ·appropriated and sold by them.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion.filed July 7, 1917. Reversed.

*T. M. Lillard,* of Topeka, for the appellant.

*Edwin A. Austin,* of Topeka, for the appellees.

*D. R. Hite,* of Topeka, as *amicus curiæ.*

The opinion of the court was delivered by

WEST, J.: April 10, 1910, Mrs. Shepard bought $4500 worth of stock in the defendant company. June 3, 1913, she sued the corporation and certain directors to rescind for fraud. The petition was finally amended so that the action proceeded as one for damages, and on July 10, 1915, judgment was recovered for $3037 against the company and two of its directors, the directors appealing and the company not. A few days before the suit was brought, and in May, 1913, the milling company entered into a composition agreement with the plaintiff banks, reciting that the milling company was indebted to the latter in the sum of $61,500 and interest, and unable to meet its obligations and desirous of turning over its property "for the protection of its creditors and the protection of its

stockholders," to save costs and litigation and provide for such operation of the business as might be prudent, and it was agreed to convey, on confirmation by the stockholders, all its property to persons selected by the banks to take possession, handle and conduct, sell and convert the same into money, and, after paying all expenses, pay all the debts of the milling company.

On July 24, a few weeks after Mrs. Shepard had begun her action to rescind, the banks brought this suit, setting up the composition agreement and alleging that on account of Mrs. Shepard's suit and her threat to attach the property, the milling company had refused to convey or to carry out the agreement, praying judgment on the notes and the appointment of receivers and the carrying out of the composition contract. The milling company appeared and consented to the appointment of receivers as prayed for. Receivers were appointed, and, on February 2, 1914, judgment was rendered on the plaintiffs' claims. Afterwards the property was converted into cash by the receivers and ninety per cent of the banks' claims were paid, enough being retained to pay ninety per cent of the judgment of Mrs. Shepard. December 28, 1915, Mrs. Shepard intervened in this suit, and asked to have the receivers directed to pay her judgment out of the proceeds of the property. January 6, 1917, she was adjudged to have no right to participate in the distribution of the funds to the detriment of the plaintiffs, and from this ruling she appeals.

There was testimony that the line of credit extended by the plaintiff banks was not changed after Mrs. Shepard became a stockholder from what it had been before, and, also, evidence that with the exception of about $7500, all of the claims of the plaintiffs arose after she became a stockholder. It was testified that the provision in the composition agreement to pay all the debts of the milling company was a mistake, and that only the debts of the plaintiffs were intended to be covered. The real question for decision concerns the right of Mrs. Shepard to share in the proceeds of the property sold under the composition agreement.

This case can not be properly decided by first classifying it under some general head and then applying the rules ordinarily invoked for that character of actions. This is not a

case of an assignment for the benefit of creditors. It is not a
bankruptcy proceeding or an ordinary receivership for the
winding up of an insolvent corporation. It is a case in all
respects peculiar to itself, made so largely by the action of the
plaintiffs themselves. Having extended credit to the com-
pany, and naturally desiring to continue such credit, and also
to secure themselves, the plaintiffs entered into the composi-
tion agreement, which was in effect to turn over the property
to trustees or receivers to be operated by them for the benefit
of the plaintiffs who were looking out, not for other creditors,
but for themselves. This is emphatically shown by their asser-
tion that the provision to pay all the debts was a mistake and
not a part of the intended agreement. At this time they knew
that Mrs. Shepard was a stockholder in the company to the
extent of $4500. But shortly this projected scheme of self-
protection encountered an obstacle. It was discovered that
Mrs. Shepard had sued the company for fraud in obtaining
her subscription to its capital stock. It was discovered further
that she was inclined to proceed by way of attachment, which,
under the statute, she had a right to do. Owing to this situa-
tion the company was refusing to carry out the composition
agreement and turn over all its property for the benefit of the
plaintiffs. These creditors did not intervene in Mrs. Shepard's
action and set up any defense to her claim, but knowing that
she had sued and was intending to proceed and recover judg-
ment, they brought this action for the purpose of compelling
the company to carry out the composition agreement, and suc-
ceeded in having turned over to their trustees or receivers all
the property of the corporation. While all this was not an
admission of Mrs. Shepard's right to recover, it was certainly
a most plain recognition of her attempt to recover, of the
ground thereof and the danger thereof. Later she amended so
as to sue for damages instead of proceeding for rescission, and
obtained a judgment against the corporation for a portion of
the sum paid by her for her capital stock. This left her as the
plaintiffs found her when they made and enforced the com-
position agreement—a stockholder—but by her own election
she was no longer a stockholder claiming rescission, but a
stockholder claiming damages. Whatever the obligations of
any other stockholder owning a similar number of shares may

have been, like obligations rested upon her.   But by the judgment of a court of competent jurisdiction she had established her right to recover against the corporation as creditor, for damages by its deceit, a certain sum of money.   Not being able to proceed by attachment as she would have had a right to do but for the proceeding brought by the plaintiffs, whose receivers sought to set up no sort of defense in her action, she sought to intervene in their action, not to be made a creditor to their exclusion, but to be permitted to receive a like per cent on her claim.   In answer to this demand the plaintiffs, apparently unmindful of the method by which and the circumstances under which they forced Mrs. Shepard into her position, invoke the general doctrine of the trusteeship of corporation shareholders.   The chief difficulty with their position is that, utterly ignoring the inequity of their claim, they also ignore the effect of her judgment and call upon us practically to disregard it.

This is not a proceeding against a stockholder to recover for a corporation liability single or double. This is not a defense by a receiver to an action brought against the corporation for fraud in obtaining a subscription to its capital stock. It is not a case of a shareholder seeking to avoid liability as such.   Hence numerous authorities which are cited and relied upon are inapplicable.

It must be remembered that the receivers do not claim to represent the estate for the benefit of the creditors, but for the exclusive benefit of the plaintiffs.   Had Mrs. Shepard loaned the mill company money, or had it in some way damaged her by the negligence of its agents and for such claim she had recovered a judgment she would be no more a creditor than she is now.   And so far as the plaintiffs are concerned they are in no better situation to dispute the force and effect of her judgment than if it were for one of the other liabilities suggested.   They dealt directly with her by calling on the court for help to keep her from attaching the property of the milling company.   Having received such assistance it is asking too much to call on the court to ignore her claim which has since ripened into judgment without opposition or defense on their part or on the part of their receivers.

29—101 Kan.

While the capital stock is often said to be regarded as a trust fund for the benefit of creditors, this does not mean that a stockholder who becomes a creditor is thereby put on an inequality with other creditors so long as no liability or obligation as stockholder is impaired or evaded.

"A corporation is a distinct person from each or all of its members and hence any one of its members has a right to maintain an action at law against the corporation to redress any injury done to him by it through its officers which is personal to him, whether such injury relates to his rights in the corporation, or to his relations to it as a stranger. If a *bona fide* creditor of the corporation, he has the same right as any other creditor to secure his demand by attachment or levy on the corporate property although he may be personally liable under the statute to satisfy other judgments against the corporation." (4 Thompson on Corporations, 2d ed., § 4468.)

(See, also, *Peirce v. Partridge,* 44 Mass. (3 Met.) 44; *Borland v. Haven,* 37 Fed. 394; *S. M. Jones Co. v. Home Oil & Development Co.,* 124 La. 148. On various phases of the controversy see *Newton Nat. Bank v. Newbegin,* 74 Fed. 135; *Howard v. Glenn,* 85 Ga. 238; 26 A. & E. Encycl. of L. 944; Note, L. R. A., n. s., 1915D. 792.)

"A stockholder may become a creditor of a corporation, and for any debts he may have paid for it in excess of his liability as a stockholder he has all the remedies and rights of any other creditor of the corporation." (*Guerney v. Moore,* 131 Mo. 650, Syl. ¶ 7.)

"The capital of a corporation is the basis of its credit. It is a substitute for the individual liability of those who own its stock. People deal with it and give it credit on the faith of it. They have a right to assume that it has paid-in capital to the amount which it represents itself as having, and if they give it credit on the faith of that representation, and if the representation is false, it is a fraud upon them; and, in case the corporation becomes insolvent, the law, upon the plainest principles of common justice, says to the delinquent stockholder, 'Make that representation good by paying for your stock'."

Thus reads the practical and logical basis of the so-called trust-fund theory as expounded by Mitchell J., in *Hospes v. Northwestern Manuf'g & Car Co.,* 48 Minn. 174, quoted in Clark on Corporations, 2d ed., page 360.

The intervenor is not refusing to answer for any liability as a stockholder. No one claims that she did not pay in full for her stock when she bought it, but other creditors who have sequestered the corporate property seek to appropriate all of it to their benefit and deny her right to participate because

she is a stockholder. But the fact that she is a paid-up stock-holder does not impair her rights as a creditor. As to all questions which might have prevented her becoming a creditor as she is, her adversaries are foreclosed by the judgment which established her rights as such. If they lose ten per cent of their claims by reason of the company's insolvency she will lose a like per cent for the same reason.

When a stockholder has satisfied all his obligations as such, and there remains nothing by way of unpaid subscription or laibility growing out of his relation as stockholder, and he is in good faith a creditor of the corporation, he stands on an equal footing with other creditors, and has the same right to treat the corporation as a stranger and adversary that they have. Under such circumstances he is not required to stand back until other creditors are satisfied but may proceed along with them on equal terms.

In this case, under all the circumstances, so far as the plaintiffs are concerned the intervenor stands clothed with her rights as a judgment creditor equal to theirs, and is not required to await their pleasure before proceeding to the satisfaction of her claim.

The judgment is therefore reversed and the cause remanded with directions to allow the claim of the intervenor.

(CASE NO. 20,443—SHEPARD V. MILLING CO.—NOT DECIDED.)

The case against the milling company and others in which the judgment for damages was procured was appealed by the directors only. It is numbered 20,443 and was submitted herewith. It was suggested in argument that should the foregoing conclusion be reached in No. 21,334, an adjustment of No. 20,443 could be made. Assuming that this will be done the latter case is left undecided so that an adjustment and dismissal may be had.