No. 33,034

ELLIS CLARK, as Receiver for THE PRETTY PRAIRIE COÖPERATIVE GRAIN COMPANY, *Appellee* and *Cross-appellant*, v. A. D. LAYMAN et al., *Appellants*.

(62 P. 2d 897)

Opinion filed December 12, 1936.

*C. M. Williams, D. C. Martindell, W. D. P. Carey, J. N. Tincher, Clyde A. Raleigh* and *L. F. Cushenbery*, all of Hutchinson, for the appellants.

*A. C. Malloy, Roy C. Davis, Warren H. White* and *Ellis Clark*, all of Hutchinson, for the appellee and cross-appellant.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover on a promissory note signed by twenty-four makers, as follows:

"PRETTY PRAIRIE, KAN.,

"$13,868.44.                                                                    June 1, 1930.

"Thirty days after date, for value received, I, we, or either of us, promise to pay to the order of The Pretty Prairie Co-Op. Grain Co. of Pretty Prairie, Kansas, thirteen thousand eight hundred sixty-eight and 44/100 dollars, at the office of the Pretty Prairie Co-Op. Grain Co., Pretty Prairie, Kan., value re-

ceived, with interest at eight percent from date until paid. Each and every maker and endorser hereof waives demand, notice and protest.

"A. D. Layman, Chas. W. Murphy; H. L. Dafforn, Jos. C. Graber, Amos Stucky, Jacob K. Graber, Joe M. Graber, J. J. Kaufman, J. D. Kautzer, H. G. Pargeter, Jacob B. Graber, E. K. Stucky, C. A. Lambert, S. J. Stucky, R. H. Lackey, Milton Stucky, P. J. Krehbiel, Jonas A. Stucky, H. R. Graber, Peter J. Graber, Joseph Schrag, Mrs. J. P. Stucky, Mrs. M. J. Bay, D. E. Bay."

Plaintiff's petition alleged that he was the duly qualified and acting receiver of The Pretty Prairie Coöperative Grain Company, payee, which had become insolvent, that the twenty-three defendants (H. L. Dafforn being dead) had made, executed and delivered the note to the payee; and that they had failed to pay the same. The plaintiff receiver prayed judgment for the full amount and interest.

Before answering this petition defendants filed a motion to abate the action on various grounds, which may be summarized thus:

(1) The note had been assigned by the Pretty Prairie Coöperative Grain Company to certain persons, to wit: Fred V. Pargeter, P. J. Krehbiel, O. W. McCowan, Jacob B. Graber, J. K. Graber, Jos. C. Graber, J. J. Kaufman, H. L. Dafforn, Amos Stucky, Mrs. P. J. Stucky, J. D. Kautzer.

(2) All of these named assignees were signers of the note except Fred V. Pargeter and O. W. McCowan, and were in possession of it, and that an action had been begun to recover the possession of that note in behalf of the original payee and to cancel the assignment thereof, that such action had been tried in the district court of Reno county and decided in favor of the present plaintiff and against the defendant assignees, and that an appeal had been taken from that judgment to the supreme court where such appeal was then pending, and by reason of these facts, the twenty-three defendants alleged that plaintiff was not entitled to sue on the note, and—

"Said defendants ask that said action be abated for the additional reason: That in said action . . . not only was the right of the possession of said note by the plaintiff involved and decided in said action, but also the right of plaintiff to sue upon said note, and also the liability of the assignees of said note or the signers of said note was involved and decided in said action by the lower court, and is involved in the appeal of said action to the supreme court of the state of Kansas, where the rights of the assignees of said note in said action . . . and the signers of said note, defendants in this case, will be determined and adjudicated in said appeal to the supreme court of the state of Kansas."

The record is silent as to what action the district court took on the foregoing plea or motion, but it may be inferred that joinder of issues was delayed by consent of court until after the appeal in the case referred to in the motion had been decided by the supreme court, which was on December 7, 1935. (*Clark v. Pargeter*, 142 Kan. 781, 52 P. 2d 617.)

Thereafter twenty of the defendant makers (all except Jacob B. Graber, P. J. Krehbiel and Chas. W. Murphy) filed an answer which contained a general denial, an admission of the execution of the note, an allegation that its execution was sometime during the month of June and not on June 1, that the date was in blank when they signed it, the name of the payee and the place of payment were in blank, that it was understood and agreed that each signer would be liable for an amount in proportion to the amount of stock which he held in the Pretty Prairie Coöperative Grain Company, and that at the time the note was signed by the defendant makers there was a contemporaneous written contract signed by all the makers of the note, the substance of which was as follows:

(*a*) The defendants designated themselves as "accommodation makers" of the note.

(*b*) Defendants stated that they were stockholders of the Pretty Prairie Coöperative Grain Co., and authorized its officers to arrange for extension of time to pay the note.

(*c*) Defendants authorized the officers of the company to retain any net profits of the company's business which might be apportioned to them as dividends to apply on the note.

In their answer defendants also alleged that the note and contract were circulated together and were the record of a single transaction and that the note was signed by these defendants—

". . . upon the representations and with the understanding that said note would be handled and collected as provided in said contract, and that each signer of said note would only be liable for $385.24, and said defendants further relied upon the motion which was passed at a stockholders' meeting of The Pretty Prairie Coöperative Grain Company June 14, 1930, and prior to the execution and delivery of said note, which resolution was in words and figures as follows, to wit:

" 'It was voted that each member pay their share of the deficit, which is $385.24. The vote twelve for, two against.' "

The twenty answering defendants further alleged that it was understood and agreed between them and the officers of the company that the note and contract would not be delivered nor become

effective until all the stockholders (apparently the twenty-four signers of the note) had signed the note and contract; and that certain of these stockholders did not sign but refused to do so, wherefore the answering defendants were not liable on the note notwithstanding they signed it, and the officers of the company had no authority to deliver the note to the company, and that such delivery was unauthorized.

Defendants pleaded further in respect to the case of *Clark v. Pargeter* in the same court and between the same plaintiff and eight or nine of these same defendants for the right of possession of the note now sued on and certain matters incidental thereto, which action culminated in a judgment which was affirmed on appeal to this court (142 Kan. 781, 52 P. 2d 617), the substance of that judgment being that the note and contract were held to be a stock liability, and that said instruments were made for the purpose of restoring a deficit in the capital stock of said corporation, and that the obligation created by said note and contract was a stock obligation.

Defendants further alleged that in 1931 through the application of certain dividends due them the indebtedness evidenced by the note was reduced to $12,878.89, and at a stockholders' meeting on May 5, 1933, the stockholders voted to apply $3,388.37 out of profits in further reduction of the note to $9,490.52.

Defendants further answered that nine of them delivered to the company certain specified quantities of wheat for storage, which was to be shipped and sold by the company and paid for to certain of these defendants, to wit: Amos Stucky, J. D. Kautzer, Jacob K. Graber, Joe M. Graber, J. J. Kaufman, A. D. Layman, Jos. C. Graber, Jonas A. Stucky, Mrs. J. P. Stucky.

The twenty answering defendants further alleged that it was agreed between defendants and the company that the price of the wheat thus delivered should be fixed at fifty-three cents per bushel, and that the Pretty Prairie Coöperative Grain Company was indebted to the aforesaid defendants in specified sums of money, no part of which had been paid, and that such defendants who were creditors of the company for such deliveries of wheat were entitled to offset the same against any amount found due from them on the note in controversy.

A cross petition was formulated for the recovery of the agreed price of several deliveries of wheat pleaded as an offset in the foregoing answer.

A separate answer was filed by Jacob B. Graber and P. J. Krehbiel which adopted the matters pleaded in the above answer of their codefendants, and also pleaded that these two defendants, together with Chas. W. Murphy and H. L. Dafforn, had signed a demand note in behalf of the company for $2,400, payable to the First National Bank of Pretty Prairie, and that each of these two defendants paid $525 and certain interest on that note and each was entitled to an offset of such amount against any sum found due from them on account of the note sued on by the plaintiff receiver.

A cross petition pleading the same facts which were the basis of the claimed offset was appended to the answer of Jacob B. Graber and P. J. Krehbiel.

A separate answer was filed in behalf of Chas. W. Murphy in which he adopted the answer of the first group of defendants as set out above. He also claimed an offset on account of a payment of $525 he had made on the note for $2,400 given in behalf of the coöperative company to the bank as alleged by his codefendants Graber and Krehbiel.

Murphy also formulated a cross petition for the recovery of that amount of $525 which he pleaded as an offset in his answer.

Against these several cross petitions plaintiff leveled a motion to strike, and also moved for judgment on the pleadings.

The trial court sustained the motion to strike; it also sustained the motion for judgment on the pleadings against the eight defendants who were parties to the action in *Clark v. Pargeter*. So far as concerns the other fifteen defendants, the motion for judgment was overruled. H. L. Dafforn, one of the makers of the note, is dead, and no steps were taken to proceed against his estate.

All parties appeal from as much of the court's rulings as was adverse to their respective interests, and the errors urged will be noticed seriatim.

1. The basis of the trial court's ruling on the motion for judgment against eight of the defendant makers was that their liability on the note had been necessarily adjudicated in the case of *Clark v. Pargeter,* supra. Defendants contend, however, that in that case the only matter litigated to a conclusion was the right to possession of the note now sued on.

Looking into that point, whatever is pertinent to the present case that was involved in *Clark v. Pargeter* was brought into the record in the answer of the twenty defendants, as well as in their plea in

abatement; and while the other fifteen defendants were not parties and of course are not bound by the matters concluded by the judgment in *Clark v. Pargeter*, they did specifically adopt the answer of the twenty defendants which referred thereto, so that the *facts of that case* are to be considered as pleaded facts in this case so far as pertinent.

A perusal of the record in *Clark v. Pargeter* and of the opinion of this court in that case, shows clearly that the contention that nothing but the bare right of possession of the note was concluded by the judgment is not correct. The eight defendants in that case admitted the execution and delivery of the $13,868.44 note to the payee. How then can they relitigate that issue of fact? They alleged that there was no consideration for the note. That matter was concluded by that judgment. Defendants alleged that the plaintiff receiver had no interest in the note and no right to sue upon it. The judgment on that point was against the defendants. They further answered that if plaintiff was entitled to recover on the note, the defendants were entitled to a credit of $3,388.37 as a part payment upon it. That point, too, was adjudicated against them. In that action it was also shown that the note was carried as an asset on the books of the Pretty Prairie Coöperative Grain Company from about June 1, 1930, until its purported assignment on May 12, 1933, to Pargeter and his codefendants, which eventually culminated in the action of *Clark v. Pargeter*. Neither the trial court nor this court should now take a different view of all those significant facts.

We do not deem it necessary to quote excerpts from our opinion to demonstrate that not only was the mere right of possession of the note litigated in *Clark v. Pargeter*, but everything incidental thereto which could have been litigated under the cause of action was actually or tacitly litigated in that case; and so far as concerns the eight defendants who participated in that litigation, the issues they now seek to raise are res judicata. In *First Nat'l Bank v. Schruben*, 125 Kan. 417, 265 Pac. 53, it was said:

"Once a cause of action has been prosecuted to final judgment, all matters pertaining thereto and which were or properly should have been litigated under the facts constituting such cause of action are conclusively determined by that judgment and binding upon all parties to the litigation and their privies. (*Snehoda v. National Bank*, 115 Kan. 836, 224 Pac. 914; *Lux v. Columbian Fruit Canning Co.*, 120 Kan. 115, 117, 242 Pac. 656; *Rucker v. Rafter*, 122 Kan. 91, 251 Pac. 420.)" (p. 421.)

See, also, *Fletcher v. Kellogg,* 125 Kan. 330, 263 Pac. 1048; *Hargreaves v. Maryland Casualty Co.,* 130 Kan. 388,. 286 Pac. 231; *City of Council Grove v. Kansas Electric Power Co.,* 137 Kan. 109, 19 P. 2d 460.

2. Considering next the error assigned on the trial court's ruling which struck out the various cross petitions of the defendants in which they set up claims against the receiver on account of divers and sundry quantities of wheat which *some.* of the defendants had delivered to the insolvent company, and for payments which three of the defendants had made on the $2,400 note, there are two familiar rules of pleading and practice which justified and required the trial court to rule as it did. All such demands as those set up as offsets in defendants' answers or as the basis of their cross petitions could and should have been presented in the regular way to the receiver of the insolvent corporation for allowance. If bona fide, they would undoubtedly have been allowed and paid in their regular order so far as the assets of the corporation would permit. But those demands cannot be maneuvered into a position of priority for payment by being brought into this litigation. The other unassailable ground for the ruling of the court is that these cross demands or offsets do not concern these defendants as a group. They are for various amounts and on various accounts, and there is no unity of interest on the part of defendants concerning them. (Civ. Code, § 88, R. S. 60-601.) In 25 A. & E. Ency. of L. (2d ed.), p. 524, it is said:

"It is also a generally prevailing rule that where there are two or more defendants jointly sued by the plaintiff, one or more of such defendants less than all cannot set off a debt due from the plaintiff to him or them only. This rule will prevent the setting off of their several claims against the plaintiff by each defendant."

See, also, *State v. Addison,* 76 Kan. 699, 704, 92 Pac. 581; *Crockery Co. v. Cleaver,* 104 Kan. 642, 180 Pac. 273, and citations; *North American Finance Corp. v. Cannavan,* 130 Kan. 468, 286 Pac. 248; and *Rakestraw v. State Highway Comm.,* 143 Kan. 87, 53 P. 2d 482.

3. Turning next to the plaintiff's cross-appeal from the overruling of his motion for judgment on the pleadings against the fifteen defendants who were not parties to the action in *Clark v. Pargeter,* just what justiciable issue of fact remains to be tried?

Although the defendants in their plea in abatement advised the trial court that their rights, as "signers of said note . . . will be determined and adjudicated in said appeal [*Clark v. Pargeter*] to

the supreme court," we are not disposed to hold that the recitals of that pleading would estop the defendants to urge any defense they may have to this action.

The answer filed by the twenty defendants admitted the execution of the note now sued on. The separate answer of Jacob B. Graber and P. J. Krehbiel and the separate answer of Chas. W. Murphy each contained a recital that they adopted the answer of their twenty codefendants. The allegations of the principal answer that when the makers signed the note it had no date and no designated payee or place of payment were immaterial, since there was neither pleading nor proof nor contention that these details were inserted without authority. Under the negotiable-instruments act, R. S. 52-214, the person in possession of a promissory note has prima facie authority to fill in the blanks in the instrument. (*State Bank v. Harford Bros.*, 116 Kan. 262, 226 Pac. 750; *State Bank v. Grennan,* 116 Kan. 442, 445, 227 Pac. 530; 8 C. J. 183 *et seq.*)

The answer alleged that it was understood and agreed that each signer would be liable for an amount in proportion to the amount of stock which he held in the Pretty Prairie Coöperative Grain Company, but that understanding and agreement was no defense to the note. If those who so understood and agreed to that matter have broken faith with each other on that matter, that is their affair; so, too, the recitals and obligations of the defendants under their contemporaneous written contract. Defendants did not become mere accommodation makers of the note because they chose to give themselves that characterization. The contract, however, does contain internal evidence that the note for $13,868.44 had been delivered, since it is stipulated in the contract that the officers of the payee company are authorized by defendants, as stockholders in the company, to arrange for extension of time of payment and to apply any dividends on their stock towards the payment of the note. Were defendants arranging for extensions of time to pay a note they had never delivered? Were they making provision for the application of their anticipated corporate dividends toward the payment of a note they had neither executed nor delivered?

And so far as concerns the matter pleaded in their answer that each signer would only be liable for $385.24, a fair reading of the contract does not warrant such a construction of its terms, and neither does the minute in the corporation record quoted in the contract justify an interpretation to that effect.

In respect to the alleged agreement that the note would not be delivered until all the stockholders had signed the note and contract, it is perfectly clear that they all did sign these instruments. In *Clark v. Pargeter* it was developed why these defendants gave this note—to restore its impaired capital, so that additional stockholders might be recruited to the company. And the record in *Clark v. Pargeter* was brought into this case by specific reference thereto in the answers. It is therefore clear that there was no breach of agreement touching the alleged prerequisites to a delivery of the note.

Touching the allegation in the answers that at a stockholders' meeting it was voted to apply $3,388.37 out of profits towards the liquidation of this note, it is not even alleged that there was such a sum available for such disposition. In connection with this point we note an allegation in the answers, that through the application of certain dividends due defendants, the indebtedness evidenced by the note had been reduced to $12,878.89, from which it might be inferred that the sum alleged to have been thus applied was $989.55. By resorting to the record in *Clark v. Pargeter*, however, it is clear that this sum was merely the aggregate of certain prorated credits to which certain persons—not all of whom are defendants—were entitled, according to the ledger sheets of the insolvent corporation. We must hold that the record disproves the note had been reduced to $12,878.89 by the application of dividends.

Having labored patiently through this record, we reach the conclusion that there is no defense to this action and that plaintiff's motion for judgment on the pleadings was perfectly good and should have been sustained as to all defendants.

In the briefs there is some discussion of the matter of joint and several liability, but the note sued on is plainly one which bound its makers to a joint and several liability thereon. The negotiable-instruments act makes it so. (R. S. 52-217; 8 C. J. 67-68.)

It follows that the judgment in favor of plaintiff against the defendants who were parties to the action in *Clark v. Pargeter* is affirmed; the judgment striking the various cross petitions is also affirmed; and on the plaintiff's cross-appeal the trial court's judgment overruling the motion for judgment on the pleadings against the other defendants is reversed, and the cause is remanded with instructions to sustain that motion, and to enter final judgment against all the defendant makers of the note as prayed for in plaintiff's petition. It is so ordered.