## KOCH v. UNITED STATES.

## PERDEW v. SAME.

## WINKLER v. SAME.

### Nos. 2733–2735.

Circuit Court of Appeals, Tenth Circuit.
Nov. 8, 1943.

Mark H. Adams, of Wichita, Kan. (Charles E. Jones and J. Ashford Manka, both of Wichita, Kan., on the brief), for appellants.

John E. Garvey, Atty., Dept. of Justice (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and F. E. Youngman, Sp. Assts. to Atty. Gen., and George H. West, U. S. Atty., of Topeka, Kan., on the brief), for the United States.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Koch, Perdew, and Winkler[1] each filed claims for refund of additional income taxes and interest paid for the year 1935. The claims were denied. The claimants brought separate suits to recover on their respective claims. The suits were consolidated below. A single judgment was entered dismissing the complaints.

On December 17, 1931, the claimants owned all of the issued and outstanding capital stock of the Oil Brokerage & Investment Company,[2] a Kansas corporation.

---

[1] Hereinafter referred to collectively as claimants.

[2] Hereinafter called the Investment Company.

On that date, the Investment Company was dissolved and its entire assets of the value of $493,590.84 were distributed to the claimants in proportion to their stock holdings. Koch and Winkler each owned 2,187.5 shares and each received assets of the value of $215,946.62. Perdew owned 625 shares and received assets of the value of $61,697.60. Thereafter, the Commissioner of Internal Revenue advised the Investment Company of proposed assessments of additional income taxes for the years 1930 and 1931 in the respective amounts of $343,816.92 and $225,578.59.

On March 7, 1934, the Commissioner notified each claimant by registered mail that he proposed to assess against him, as transferee of the Investment Company, in accordance with the provisions of § 311 of the Revenue Act of 1928, 45 Stat. 860, 26 U.S.C.A. Int.Rev.Code, § 311, the full amount, plus interest, of the additional tax determined against the Investment Company for the year 1930. On March 14, 1935, the Commissioner sent a like notice by registered mail to each claimant with respect to the additional taxes determined against the Investment Company for the year 1931.

The claimants filed a petition with the Board of Tax Appeals for a redetermination of the deficiency. After the matter reached the Board of Tax Appeals an agreement was entered into fixing the liability of Koch and Winkler in the sum of $76,562.50 each, with interest as provided by law, and fixing the liability of Perdew at $21,875.00, with interest as provided by law.

The claimants filed income tax returns for the year 1931, in which they reported capital gains resulting from distributions to them of the assets of the Investment Company. The Commissioner determined that none of them had realized a capital gain from the distribution of the assets of the Investment Company, and that each was taxable on the respective amount received by him as a dividend. Accordingly, the Commissioner proposed deficiencies which were paid on October 18, 1934. On December 10, 1934, each claimant filed a claim for refund for taxes paid for the year 1931, identical except as to amounts, and reading, in part, as follows:

"If it is ultimately determined that The Oil Brokerage and Investment Company is liable for any additional income tax or other claim which had not been paid or taken into account at the time of liquidation, claimant has overpaid his individual income tax for 1931. This claim is filed to protect the right to any refund which might thus be determined to be due."

The agreement above referred to fixing their respective liabilities as transferees also stipulated that such claims for refund should be denied.

The decision fixing the transferee liabilities of the claimants was entered August 2, 1935. Koch and Winkler each paid $76,562.50 and $20,170.54 interest. Perdew paid $21,875.00 and $5,763.01 interest. Each claimant in his individual income tax return for the year 1935 took as a deduction for interest paid during the taxable year the amount he had paid as interest in discharging his transferee liability. The Commissioner disallowed the deductions and assessed additional taxes, which were paid in September, 1940. On October 12, 1940, the claimants filed the claims on which these actions are predicated.

Each claimant now asserts that he was entitled to deduct the amount of interest which accrued on the tax liabilities of the Investment Company after the date the assets of the Investment Company were distributed and which he paid as transferee.

Section 23 of the Revenue Act of 1934, 48 Stat. 688, 26 U.S.C.A. Int.Rev.Code, § 23, in part, reads:

"In computing net income there shall be allowed as deductions: * * *

"(b) Interest. All interest paid or accrued within the taxable year on indebtedness, * * *."

Kansas Gen.Stat.1935, § 17-808, provides that upon the dissolution of a corporation created under the laws of Kansas, unless a receiver is appointed, the president and directors, at the time of the dissolution, shall be trustees of the creditors and stockholders, and shall divide the moneys and other property among the stockholders, after paying the debts due and owing by the corporation at the time of its dissolution, as far as such moneys and property will enable them.

Kansas Gen.Stat.1935, § 17-809, provides that such trustees shall be severally responsible to the creditors and stockholders of the corporation, to the extent of its property and effects that shall have come into their hands.

Counsel for the claimants contend that by virtue of these statutes they were personally liable for the tax indebtedness of the Investment Company and that, therefore, the interest which they paid was interest on their debts.

But the liability asserted against them by the Commissioner was not predicated on the fact that they were statutory trustees or corporate officers. It was predicated on the fact that the assets were distributed to them as stockholders and upon their liability as transferees arising from the fact that they took the assets as trustees for the creditors of the Investment Company.

Section 311 of the Revenue Act of 1928, in part, reads as follows:

"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title."

This statute did not create a substantive right, but merely provided a new remedy for enforcing the existing liability at law or in equity of transferees of property.[3]

■ Where the assets of a dissolved corporation have been distributed among the stockholders, a creditor of the dissolved corporation may follow such assets as in the nature of a trust fund into the hands of stockholders. The creditors have the right to subject such assets to their debts and for that purpose the stockholders hold them as though they were trustees. In other words, the assets of the dissolved corporation are a trust fund against which the corporate creditors have a claim superior to that of the stockholders. A stockholder who receives only a portion of the assets is liable to respond only for that portion. Where the assets coming into the hands of a stockholder suffer a change in value, the creditor must take the trust fund as he finds it, securing the advantage of any increase and suffering any decrease, unless the stockholder is responsible for the decrease. Where the trust property has been used by the stockholder for his own purpose, or disposed of by him, he may be held personally liable for the full value thereof.[4]

■ Thus, it will be seen that the obligation of the stockholder is to respond as trustee for the property coming into his hands and for any breach of his obligations as trustee with respect thereto. There is no personal liability, except in cases where he has disposed of the trust fund in such a manner that it cannot be followed, or where he has caused a diminution in the value of the trust assets. Here, claimants were required to respond as trustees for the debt of the Investment Company on account of assets which came into their possession. No personal liability was asserted against them because the trust assets could not be reached or for a violation of their duties as trustees. Therefore, in paying the tax liability and the interest which had accrued thereon, they did not pay their own debt, but the debt of the Investment Company, and they did not pay it with their own money or assets, but with the assets of the Investment Company held by them as trustees and to which the government, as creditor, had a prior claim.

We think Scripps v. Commissioner, 6 Cir., 96 F.2d 492, and Penrose v. United States, D.C.Pa., 18 F.Supp. 413, are distinguishable from the instant case. In the Scripps case, an inter vivos trust was created. Shares in the E. W. Scripps Company and other real and personal property were transferred to the trust. The settlor reserved for himself during his lifetime the entire net income of the trust and the free use and enjoyment of its real estate and

3 Phillips v. Commissioner, 283 U.S. 589, 592, 51 S.Ct. 608, 75 L.Ed. 1289.

4 McWilliams v. Excelsior Coal Co., 8 Cir., 298 F. 884, 886; Curran v. State of Arkansas, 56 U.S. 304, 307, 15 How. 304, 307, 14 L.Ed. 705; Mumma v. Potomac Co., 33 U.S. 281, 286, 8 Pet. 281, 286, 8 L.Ed. 945; Chicago, R. I. & P. R. Co. v. Howard, 74 U.S. 392, 410, 7 Wall. 392, 410, 19 L.Ed. 117; Capps Mfg. Co. v. United States, 5 Cir., 15 F.2d 528; Note, 47 A.L.R. 1355; Note, 97 A.L.R. 479; Fletcher Cyc. Corp., Perm. Ed., Vol. 16, p. 977, § 8161.

retained power of revocation and modification. The trust instrument provided that net income of the trust fund available for distribution should be paid to certain beneficiaries after the death of the settlor. It directed the trustee to pay federal estate taxes from the income or principal of the trust estate. The settlor died in 1926. In the executor's estate tax return, the trust property was treated as a part of the gross estate. The estate tax and interest thereon were paid in installments over a period of years from funds of the trust estate. For each year in which an installment of tax and interest was paid, the trustee filed a fiduciary tax return in which he took as deductions the interest paid on the estate tax. The Commissioner disallowed the deductions and since 30 per cent of the income was to be accumulated and 70 per cent paid to Robert Scripps individually, the Commissioner added 30 per cent of the disallowed deductions to the trust income and 70 per cent to the income of Robert Scripps. The court held the interest payments were proper deductions.

Section 315(a) of the Revenue Act of 1926, 44 Stat. 80, 26 U.S.C.A. Int.Rev.Acts, page 253, provides that unless the estate tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent. Section 315(b) of such Act provides if the decedent makes a transfer, by trust, of any property in contemplation of or intended to take effect in possession or enjoyment at or after his death, and if the tax in respect thereto is not paid when due, "then the transferee, trustee, or beneficiary shall be personally liable for such tax," and such property, to the extent of the decedent's interest therein at the time of such transfer, shall be subject to a lien equal to the amount of such tax.

The trust property was a part of the decedent's gross estate. The statute fastened a lien upon the trust property for the tax and interest and imposed a primary obligation upon the trustee and the trust estate for the payment of the tax and the interest. The interest was paid by the trustee from the trust estate. The trustee was a taxpayer seeking to take the deduction. The 70 per cent of the interest paid in accordance with the directions of the trust instrument and in response to a primary obligation imposed by the statute was never received by Robert Scripps and clearly was not income to him. Whereas, in the instant case, the claimants paid interest owing not by them but by the In-

vestment Company, out of trust funds held by them for the benefit of its creditors; the interest was not their debt and they did not pay it with their assets; they were trustees, but not beneficiaries, and hence suffered no diminution of income as beneficiaries by reason of the payment of such interest.

In the Penrose case, Charles B. Penrose, who died February 27, 1925, left a will by which he created a testamentary trust and transferred his entire residuary estate to trustees and directed them to divide it into two parts and pay the income from the respective parts to his son and daughter during their respective lives with remainders over. The executors paid an additional estate tax and a portion of the interest which had accrued thereon out of a fund reserved for estate taxes in their hands. They paid the remainder of the interest out of income in their hands as trustees of the trust. Thereafter, the trustees filed fiduciary returns in each of which they sought to deduct one-half of the interest so paid. The beneficiary of one part, in his individual income tax return for 1929, charged himself only with the income from the trust remaining after deducting $10,263.50, one-half of the interest paid by the executors from the trust income. The Commissioner assessed an additional tax on that amount. The beneficiary paid the tax and filed a claim for refund, which was disallowed, and then brought suit to recover on the claim. The court held, since the trust was created by the will, that the portion of the estate funds allocated to the trust was a part of the gross estate, that the estate could not be wound up until the termination of the trust, that the interest was paid upon indebtedness of the trust estate, and that such beneficiary was not taxable on that portion of the income paid out by the trustees as interest. That case might be applicable here if the interest on the tax liability of the Investment Company had been paid out of income derived from the assets transferred to the claimants and the United States were seeking to tax them on account of that income, or if they were here asserting that they did not realize income as dividends in 1931 from the assets of the Investment Company distributed to them to the extent that such assets were used to pay the tax liabilities of the Investment Company for 1930 and 1931. But the record in the instant case presents no such issue. The compromise agreement en-

tered into when the case was pending before the Board stipulated that the respective claims for refund for taxes paid by the claimants for the year 1931 should be disallowed.

Since the obligation discharged by the claimants was not their individual obligation, but one imposed upon them as trustees, and since they discharged it out of trust funds in their hands, and not with their own funds, we hold they cannot deduct the interest paid from their individual 1935 income.

Affirmed.