No. 42,360

FLOYD E. FORD and DORTHA A. FORD, his wife, *Appellees,* v. RAMEY SEWELL and JULIA R. SEWELL, his wife, *Appellants.*

(366 P. 2d 285)

Opinion filed November 10, 1961.

*Karl V. Shawver, Jr.,* of Paola, argued the cause, and *Karl V. Shawver,* of Paola, was with him on the briefs for the appellants.

*Oliver D. Rinehart,* of Paola, argued the cause, and *William D. Bright,* of Paola, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This action involves a dispute as to the boundary line between adjoining lands of the parties. Plaintiffs originally owned all the land in question. The defendants purchased from plaintiffs Lots 4, 5 and 6 and a triangular part of Lot 3, all in Block 4 of Angier's Addition to the City of Paola, Kansas. There were no

definite markings to determine the exact property line of the purchased part of Lot 3. The parties did make some measurements which were furnished to the scrivener who prepared the deed.

The plaintiffs brought this action by filing a petition in which, in the first cause of action set forth in such pleading, they alleged that the deed prepared by defendants' scrivener did not correctly or sufficiently express the agreement of the parties as to the boundary line; charged mutual mistake of the parties, or mistake on the part of plaintiffs and fraud on the part of defendants in the description of the part of Lot 3 to be conveyed, and set out what they contend to be the true description. As to the first cause of action the prayer of the petition asks that the deed be reformed to properly describe the premises, that the boundary line be permanently established, and that the court decree the true boundary line to be that described in the plaintiffs' petition.

In order to avoid possible misunderstanding it should be stated at this point that our failure to refer to the second and third causes of action contained in the petition is due to the fact, as counsel in oral argument finally concede, that the record here presented is limited to proceedings in the court below pertaining to the first cause of action only.

Pertinent portions of the defendants' answer assert that:

1. Dortha A. Ford, one of the plaintiffs and a tenant in common of the realty sold to defendants, is estopped from maintaining this action due to a quiet title action in which she was named as a defendant.

2. The boundary line was definitely fixed by agreement and understanding of the parties as described in the deed of conveyance.

The defendants also filed a motion for judgment on the pleadings as to the plaintiff, Dortha A. Ford.

With issues joined as related the cause came on for trial by the court which, after hearing the evidence adduced by the parties and arguments by their respective counsel, made findings of fact and conclusions of law and then rendered judgment in which it established the boundary line about half way between the two lines for which the parties contend and overruled the motion for judgment on the pleadings. Thereupon defendants perfected the instant appeal.

At the outset, we are confronted with plaintiffs' contention that the motion for a new trial was filed before the rulings of the court upon which defendants' base their alleged error and that in the

absence of a motion for a new trial the alleged errors cannot be reviewed. This contention must be disposed of before the merits of the appeal can be considered.

Whether the motion for a new trial as filed covered the later rulings of the trial court need not be considered because there was no appeal taken from the order overruling the motion and it was not specified as error. Moreover, defendants have appealed from the judgment only and limit their specifications of error to charges that the trial court erred (1) in overruling their motion for judgment on the pleadings; (2) in locating the involved boundary line; and (3) in rendering judgment for plaintiffs on their first cause of action.

We have repeatedly held that failure to appeal from an order overruling a motion for a new trial or failure to specify the order as error limits the review of this court to the question whether the pleadings, findings of fact and conclusions of law support the judgment. Both subjects are thoroughly discussed and laid to rest in *McCarty v. Kansas-Nebraska Natural Gas Co.*, 176 Kan. 386, 271 P. 2d 264, where it is said and held:

"Defendant filed a motion for a new trial which was considered by the court and overruled and judgment was rendered for plaintiff upon the general verdict of the jury. In due time defendant filed its notice of appeal. This appeal was only from the judgment rendered by the court upon the general verdict. There was no appeal taken from the order of the court overruling the motion for a new trial, or from any other ruling of the court adverse to the defendant.

"This is an appellate court. In cases tried in the district court there may be many questions passed upon which the party appealing does not, for some reason, care to ask this court to review. The appeal is necessarily limited to the questions from which an appeal is taken. The result is that the appeal brought to us is on the judgment of the court. Examining the judgment in this case we find nothing wrong with it unless it is some of the trial errors set out by the defendant in its motion for a new trial. Since no appeal has been taken from that order we are unable to review it. Our cases on that point are numerous.

"In *Mathis v. Public School District No. 103*, 175 Kan. 453, 264 P. 2d 1082, it was held:

" 'Where the action of the trial court in overruling a motion for new trial is not specified as error, trial errors are not subject to appellate review.' (Syl. 1.)

"and in the opinion p. 456 it is said:

" 'Long ago this court announced the rule, to which it has consistently adhered, that where the overruling of a motion for a new trial is not specified as error, trial errors will not be reviewed. See e. g., *Gas Co. v. Dooley*, 73 Kan.

758, 84 Pac. 719; *Brewer v. Harris,* 147 Kan. 197, 75 P. 2d 287; *Heniff v. Clausen,* 154 Kan. 717, 121 P. 2d 196; *Palmer v. Helmer,* 159 Kan. 647, 157 P. 2d 531; *Holmes v. Kalbach,* 173 Kan. 736, 742, 252 P. 2d 603; and numerous other decisions cited in Hatcher's Kansas Digest, Rev. Ed., Appeal & Error, § 181; West's Kansas Digest, Appeal & Error, § 719 (10).'

"In *Weede v. Bannon,* 175 Kan. 569, 570, 265 P. 2d 1025, it is said:

" 'In passing, it is noted that defendant does not specify as error the order overruling his motion for a new trial. That being the case, alleged trial errors, such as rulings on the admissibility of evidence and concerning instructions, are not open to appellate review. (*Brewer v. Harris,* 147 Kan. 197, 75 P. 2d 287; *Heniff v. Clausen,* 154 Kan. 717, 121 P. 2d 196; *Palmer v. Helmer,* 159 Kan. 647, 157 P. 2d 531; and *Holmes v. Kalbach,* 173 Kan. 736, 742, 252 P. 2d 603.)'

"In *Crowder v. Lindberg,* 175 Kan. 671, 265 P. 2d 851, it is said:

" 'Appellant contends the court committed various trial errors and rendered an erroneous judgment. Appellant, however, has appealed only from the judgment rendered and not from the order overruling its motion for a new trial. It follows alleged trial errors are not reviewable. (*Hardman Lumber Co. v. Spitznaugle,* 130 Kan. 346, 286 Pac. 235; *Smith v. Kansas Transport Co.,* 172 Kan. 26, 238 P. 2d 553.)' (p. 672.)

"In *Murphy v. Cole,* 175 Kan. 822, 267 P. 2d 959, it is said:

" 'It may be observed that specifications 2 and 3 refer to trial error. Appellants did file a motion for a new trial which was overruled but that ruling is not specified as error. We have repeatedly held that errors relating to matters occurring at the trial, for which a new trial is asked, cannot be considered on appeal unless the action of the trial court in overruling the motion is specified as error. See cases collected in West's Kansas Digest, App. & E., § 719 (10) and Hatcher's Kansas Digest, App. & E., § 181.' (p. 822.)" (pp. 388, 389.)

This court has had the same questions before it in more recent decisions. See, e. g., *Reger v. Sours,* 181 Kan. 423, 424, 311 P. 2d 996; *Jeffers v. Jeffers,* 181 Kan. 515, 518, 313 P. 2d 233; *Marshall v. Bailey,* 183 Kan. 310, 312, 327 P. 2d 1034; *Shelton v. Simpson,* 184 Kan. 270, 336 P. 2d 159; *Green v. State Highway Commission,* 184 Kan. 525, 337 P. 2d 657, and has carefully adhered to the rule as announced in the *McCarty* case, *supra.* See, also, *Baker v. Maguire's Inc.,* 176 Kan. 579, 272 P. 2d 739; *State, ex rel., v. Miller,* 177 Kan. 324, 279 P. 2d 223; *McIntyre v. Dickinson,* 180 Kan. 710, 307 P. 2d 1068.

The record will be examined for the purpose of determining whether the judgment is supported by the pleadings and the trial court's findings of fact and conclusions of law.

We will first consider defendants' contention that the motion for judgment on the pleadings should have been sustained as to the plaintiff Dortha A. Ford.

On this question the court found:

". . . Soon after the defendants purchased the land from the plaintiffs the defendants in order to make the title acceptable for a loan conducted a quiet title suit in which Dortha A. Ford, one of the plaintiffs in this action, was made one of the defendants in the quiet title action. This apparently for the purpose of correcting a spelling of the name of Dortha A. Ford. . . ."

The court, citing *Robinson v. Mutchmore,* 128 Kan. 419, 278 Pac. 18, as authority, made the following conclusion of law:

"The quiet title action heretofore mentioned does not bar the plaintiffs in this action from asserting possession of the land up to the ornamental fence. One of the jurisdictional facts necessary to a quiet title action is that plaintiff have actual possession of the land to which the title is quieted.

. . . . . . . . . . . . . .

"This quiet title action is not a bar to plaintiffs asserting their claim for the land in question."

The parties by joint effort shortly after the deed was made built a substantial ornamental fence at a line about midway between the points contended for by the parties. It was built of gas pipe set in concrete and painted white and left a gateway at both the north and the south ends of the fence. Each of the parties held possession of the land up to the ornamental fence.

Under the state of record we are not inclined to disturb the judgment of the court overruling the motion for judgment on the pleadings. The defendants have set up as a defense a quiet title action in which Dortha A. Ford was named as one of the defendants. The answer alleges that the petition in the quiet title action described the property using the description as contended for by defendants in this action, and a decree quieting title was entered April 30, 1957. Plaintiffs replied alleging that the quiet title action was "filed for the purpose of clearing some discrepancies in the chain of title to the property and was not intended to be and was not an adjudication of the issues involved in this action."

In the opening statement of counsel for defendants the court inquired as to why Dortha A. Ford was made a party to the quiet title action and not Floyd E. Ford. Counsel answered: "The fact there was a difference in her signature." It would appear that if it was intended to settle the boundary dispute in the quiet title action the other tenant in common would have been made a party.

Ordinarily a quiet title action is brought to remove a cloud from the title, not to determine a boundary dispute. In the absence of the record in the quiet title action, particularly the pleadings and

the judgment, this court should not attempt to determine whether the boundary dispute was concluded by the judgment.

The question whether the pleadings, findings of fact and conclusions of law support the judgment fixing the boundary along the line of the ornamental fence jointly constructed by the parties must be answered in the affirmative.

The court made findings of fact in part as follows:

"This suit involved the findings and fixing of property lines between adjoining lands of the parties located in the City of Paola.

"1. The plaintiffs originally owned all of the land in question. Defendants operated a business across the street and desired to purchase plaintiffs' land for the purpose of building and operating a lunch stand and a gasoline and automobile service station. Plaintiffs owned all of Lots 3, 4, 5 and 6 of Block 4. The lots fronted east on a public street. Lot 3 was the north lot of the four lots.

"2. The defendants made as a condition to their purchase of Lots 4, 5 and 6 that they also have a three-cornered tract on the east end of Lot 3, giving more access to their business on Lots 4, 5 and 6. At the time plaintiffs had a mobile home on Lot 3. Plaintiff was operating a shop on the lot also. December 28, 1953 a bargain was made and a deed executed conveying Lots 4, 5 and 6 and a portion off the east end of Lot 3 to the defendants. It is the triangular tract on Lot 3 and the line between Lots 3 and 4 that are involved in this suit.

"3. There were no definite markings to determine the exact lines of the property. Plaintiff and defendant went to the property and made some measurements, whether it was by tape line or stepped off is not certain. Plaintiffs' evidence is that there being no marking at the northeast corner of Lot 3 they went to the permanent curb line on the west line of the improved street and started the measurements at that point. The defendants' evidence is that they located and started on the northeast corner of Lot 3. They measured south to the supposed south line of Lot 3 and then measured west. At a point near a growing tree the plaintiff stopped and indicated that the line could go no further west and that the tree would be on plaintiff's land. That tree is seen in Plaintiffs' Exhibit K and Defendants' Exhibit 4.

"4. From measurements furnished the scrivener prepared the deed, a copy of which is attached to plaintiffs' petition. This deed starts the measurements at the northeast corner of Lot 3.

"5. A rough plat of the land in controversy is prepared by the Court. Line 'A' is contended for by plaintiff. Line 'B' is contended for by defendant and line 'C' is the location of the fence built by the joint efforts of both. The parties were all friendly at this time.

. . . . . . . . . . . . . .

"7. At the time of the deed plaintiff only had a trailer house on the Lot. Later he built onto the trailer and now has a substantial home. After the building of the home the plaintiff began using the south opening in the fence. A gate was discussed between the parties but none built. Of late years a preacher has been parking a trailer in this gate-way and holding meetings and this may be 'the bug under the chip.'

"8. The south line of Lot 3 was never definitely fixed or known until recent survey but defendant in filling his lots filled over on Lot 3 some 5 or 6 feet. Plaintiff riprapped the side of the fill to prevent washing and the fill line was treated as the property line. No one knew exactly where that line was and did not make an issue of it."

Finding number 6 is omitted because it was later stricken by the court and a definite description added as follows:

"The land owned by the defendants in Lot 3 is a tract of land described as follows: Beginning at the southeast corner of Lot 3, running thence north along the east line of Lot 3 to a point 18 feet and 6 inches south of the northeast corner of said Lot, thence in a southwesterly direction along the center line of an ornamental fence to a point on the south line of Lot 3 which is located on the extension of a line through the center of the said ornamental fence to the south line of said Lot 3, then east        feet to the point of beginning, all in Block 4, Angiers Addition to the City of Paola, Miami County, Kansas."

The trial court's conclusions of law on this issue are as follows:

"The true line between the land owned by the plaintiffs in Lot 3 and that conveyed to the defendants of Lot 3 is along the ornamental fence built by the parties. The rule of law relating to the establishment of both the east line and the line between Lots 3 and 4 are found correctly stated in *Kyte vs. Chessmore,* 106 Kan. 394-398:

" 'Where there is a dispute as to the dividing line the adjoining owners may by agreement establish a boundary which will be binding upon themselves and their successors in interest, regardless of whether or not it corresponds with the true location. (9 C. J. 230; 4 R. C. L. 126; see, also, 2 C. J. 137.) And it is said that the existence of such an agreement may be inferred from circumstances, such as the maintenance of a fence (4 R. C. L. 129) or long acquiescence. (9 C. J. 232; see, also, p. 242.) By the weight of authority, however,

" 'Where the intention was to establish the line according to the true boundary, and by mistake the parties agreed on a line which does not conform to such boundary, the line so agreed on is not conclusive, and the agreement may be set aside by either party unless equitable reasons exist for adhering to the erroneous line.' (9 C. J. 237.)

"An additional authority with reference to the east line is found in *Schlender vs. Maretoli,* 140 Kan. 533.

"A case in point is found in *Blanford vs. Biven,* 123 Kan. 269:

" 'BOUNDARIES — *Ascertainment and Establishment — Agreement of Parties Conclusive.* When one who owns a tract of land sells a part of it to another, and the seller and purchaser go upon the land, and agree to the location of the line dividing the property sold from that not sold, the line so agreed upon becomes the line between the parties, although a subsequent survey or measurement of the premises may disclose that it should have been a few feet one way or the other.' "

In the face of the record presented we find no reasonable basis

for a contention that the judgment of the trial court is not supported by the pleadings, findings of fact and conclusions of law. Therefore what has been heretofore stated and held requires an affirmance of such judgment.

It is so ordered.