No. 65,279

WILLIAM D. CARSON and NORMA I. CARSON, *Appellants,* v. J. M. DAVIDSON and DANNY MARTIN, *Appellees.*

(808 P.2d 1377)

Opinion filed April 12, 1991.

*Charles D. Green,* of Arthur, Green, Arthur, Conderman & Stutzman, of Manhattan, argued the cause and was on the briefs for appellants.

*Troy V. Huser,* of Myers, Pottroff & Ball, of Manhattan, argued the cause, and *Dan H. Myers,* of the same firm, was with him on the brief for appellee J. M. Davidson.

*David K. Clark,* of Law Offices of David K. Clark, of Fredonia, was on the brief for appellee Danny Martin.

The opinion of the court was delivered by

MCFARLAND, J.: In this action plaintiffs William D. and Norma I. Carson are seeking to recover on a judgment they have against a dissolved corporation from defendants J. M. Davidson and

Danny Martin, who were the stockholders receiving the assets of the corporation upon dissolution. Recovery is sought under the trust fund doctrine. The district court held that Kansas has not adopted the trust fund doctrine and entered summary judgment in favor of defendants. Plaintiffs appeal therefrom.

The facts may be summarized as follows. Prior to April 1983, Tuttle Creek Development, Inc., (TCD) was a valid Kansas corporation. J. M. Davidson and Danny Martin were its sole officers, directors, and stockholders, each owning 50% of the stock. The corporation's only significant asset was a facility known as Colonial Gardens Mobile Home Park.

In April of 1983, TCD and the plaintiffs entered into a contract whereby plaintiffs would purchase the facility for $650,000 the same to be paid by a combination of assumption of mortgage indebtedness, execution of promissory notes to the individual defendants herein, and actual cash outlay. The contract provided that the cash was to be paid directly to Davidson and Martin, rather than to the corporation. The closing of the sale took place in July 1983, and the defendants received the cash payment as specified.

In July 1984, the corporate charter of TCD was revoked by the Kansas Secretary of State for failure to file its 1983 annual report. The corporate existence of TCD has never been revived. In July 1983, TCD had filed for an Internal Revenue Code Sec. 337 liquidation.

On May 15, 1986, plaintiffs herein filed an action against TCD and defendant Davidson, alleging breach of contract (case No. 86-C-178 in the Riley County District Court). Plaintiffs claimed that those defendants had promised to secure a 30-foot easement for expansion of the mobile home park. The case was tried to a jury. The trial court refused to submit the breach of contract claim against Davidson to the jury on the basis the same was barred by K.S.A. 17-7101(b). Plaintiffs' claim against Davidson based upon promissory estoppel was submitted to the jury. The jury held in favor of plaintiffs on their claim against TCD, fixing damages at $12,200. The jury held in favor of Davidson on the promissory estoppel claim against him. The verdict was returned on April 14, 1988, and no appeal was taken therefrom. In June

1988, a general execution was issued against TCD and returned unsatisfied.

On March 15, 1989, the action herein was commenced by plaintiffs to collect the TCD judgment from defendants Davidson and Martin as stockholders of TCD under the trust fund doctrine. Plaintiffs and defendants each sought summary judgment. Judgment was entered in favor of defendants on the ground the doctrine authorizing such an action had not been adopted in Kansas. Plaintiffs appeal therefrom.

### TRUST FUND DOCTRINE

19 Am. Jur. 2d, Corporations § 2714 describes the trust fund doctrine as follows:

"A corporation cannot disable itself from responding to liability for its acts by distributing its property among its stockholders and leaving remediless those having valid claims; in such a case the claims, after being reduced to judgment, may be satisfied out of the assets in the hands of the stockholders. The right to follow the distributed assets of a corporation in the hands of the stockholders applies not only to those who are creditors in the commercial sense, but to all who hold unsatisfied claims."

Probably the leading case on this doctrine is *Pierce v. United States*, 255 U.S. 398, 65 L. Ed. 697, 41 S. Ct. 365 (1921). In *Pierce*, the Waters Pierce Oil Company, a Missouri corporation, was indicted for violation of the Elkins Act by receiving rebates. In 1913, the company sold and transferred all its property to the Pierce Oil Corporation and distributed the proceeds, through trustees, to the stockholders of the now-defunct corporation. 255 U.S. at 400. The case was tried in 1914. The company was convicted and fined $14,000. In 1915, the conviction was upheld on appeal, and, thereafter, execution was issued against the corporation. When the execution went unsatisfied, the United States sued the stockholders, as well as the defunct corporation and the trustees. The trial court dismissed the action against the corporation and the trustees, but granted the sought-after relief against the stockholders. The Eighth Circuit affirmed. The United States Supreme Court affirmed, reasoning:

"The law which sends a corporation into the world with the capacity to act imposes upon its assets liability for its acts. The corporation cannot disable itself from responding by distributing its property among its stockholders and leaving remediless those having valid claims. In such a case the claims

after being reduced to judgments may be satisfied out of the assets in the hands of the stockholders." 255 U.S. at 402.

Moreover, the Supreme Court rejected the argument that the judgment could not be collected because the judgment was not entered by the trial court until one year after the company divested itself of the property and the proceeds were distributed to the shareholders, reasoning as follows:

"But when a corporation divests itself of all its assets by distributing them among the stockholders, those having unsatisfied claims against it may follow the assets, although the claims were contested and unliquidated at the time when the assets were distributed." 255 U.S. at 403.

In Kansas, we have long held that capital stock in a corporation is a trust fund for the benefit of general creditors of the corporation. *Brokerage Co. v. Dunn*, 91 Kan. 64, 136 Pac. 939 (1913).

In *Clark v. Pargeter*, 142 Kan. 781, 52 P.2d 617 (1935), certain stockholders issued their promissory note to the insolvent corporation. The note was assigned to certain stockholders and creditors. The corporation went into receivership. The receiver brought this action to set aside credit given on the note and the assignment of it and to recover possession of the note. The *Clark* facts are quite different from those before us, but the following two excerpts from *Clark* are significant as to whether the trust fund doctrine has been adopted in Kansas:

1. "In view of the fact the trust-fund doctrine has been recognized as the law of this state for over forty years, it seems the better rule to follow that when the corporation is insolvent or in a failing condition, it should not be permitted to so deal with its shareholders who are creditors that they receive a preferential right to the assets of the corporation to the detriment of the general creditors. They should receive their dues ratably with other general creditors." 142 Kan. at 789.
2. "And finally, another reason why appellants should not prevail is that under decisions noted the 'trust-fund doctrine' is followed in this state. The note in question is a part of that trust fund, and the action is to follow and recover it." 142 Kan. at 791.

The facts and holding in *Welden v. American Steel & Wire Co.*, 143 Kan. 125, 53 P.2d 1195 (1936), are summarized in its syllabus as follows:

"Where a corporation was an employer under the workmen's compensation law when an injury occurred to one of its employees, and he regularly obtained an award by an arbitrator for temporary disability, all of which

award had been paid to the clerk of the district court, and some years later a stockholder in said respondent company purchased the assets thereof and received a proportionate share of the purchase price, such stockholder and purchaser is not a proper defendant nor liable in an action commenced more than eight years after the accident to review and modify such award by finding the injury and disability to be permanent instead of temporary."

In reaching this conclusion, this court discussed the trust fund doctrine and held it inapplicable under the facts—primarily because the claim arose under the Workers Compensation Act, which provides for no such cause of action against the purchaser of a corporation's assets.

In reaching its conclusion that the trust fund doctrine had not been adopted in Kansas, the trial court in the case before us relied in part upon *Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 624 P.2d 952 (1981). The trial court recognized that *Speer* was distinguishable factually but felt the case offered "some guidance." We do not agree. In *Speer* the creditor-plaintiff was not seeking to follow corporate assets in the hands of stockholders. Rather, he was suing directors and officers for their alleged mismanagement of the corporation. We held:

"A creditor of an insolvent corporation who sues solely on his own behalf cannot maintain a personal action against directors or officers who, by negligent mismanagement of the corporation's affairs, have breached their duty to the corporation to the consequent damage or injury of its creditors." 229 Kan. 272, Syl. ¶ 10.

There were no assets being held by stockholders involved in *Speer*. Hence, the trust fund doctrine could not be applicable. Put another way, plaintiff Speer was not pursuing corporate assets in the hands of stockholders.

The Tenth Circuit Court of Appeals applied the trust fund doctrine to a case arising in Kansas in *Koch v. United States*, 138 F.2d 850 (10th Cir. 1943). The *Koch* opinion held:

"Where the assets of a dissolved corporation have been distributed among the stockholders, a creditor of the dissolved corporation may follow such assets as in the nature of a trust fund into the hands of stockholders. The creditors have the right to subject such assets to their debts and for that purpose the stockholders hold them as though they were trustees. In other words, the assets of the dissolved corporation are a trust fund against which the corporate creditors have a claim superior to that of the stockholders. A stockholder who receives only a portion of the assets is liable to respond only for that portion. Where the assets coming into the hands of a stockholder

suffer a change in value, the creditor must take the trust fund as he finds it, securing the advantage of any increase and suffering any decrease, unless the stockholder is responsible for the decrease. Where the trust property has been used by the stockholder for his own purpose, or disposed of by him, he may be held personally liable for the full value thereof.

"Thus, it will be seen that the obligation of the stockholder is to respond as trustee for the property coming into his hands and for any breach of his obligations as trustee with respect thereto. There is no personal liability, except in cases where he has disposed of the trust fund in such a manner that it cannot be followed, or where he has caused a diminution in the value of the trust assets." 138 F.2d at 852.

We conclude the trust fund doctrine is viable in Kansas. Said doctrine is summarized as follows: Under the trust fund doctrine the assets of a dissolved corporation are a trust fund against which the corporate creditors have a claim superior to that of the stockholders, and creditors have the right to follow such assets into the hands of stockholders who hold assets as though the stockholders were trustees. A stockholder of a dissolved corporation receiving assets of a dissolved corporation is liable to respond to a creditor of the corporation only to the extent of the assets so received or the value thereof if the same have been disposed of by the stockholder.

Accordingly, we hold the district court erred in entering summary judgment in favor of the defendants on the ground that the trust fund doctrine had never been adopted in Kansas.

Before concluding, a second issue raised by defendant Davidson must be discussed. As a second ground for the granting of summary judgment in his favor, this defendant claimed this action as to him was barred by the doctrine of res judicata. By virtue of its holding on the trust fund doctrine issue, the trial court did not reach this issue. As will be recalled, Davidson was a defendant in the earlier action brought by plaintiffs against the corporation (and Davidson).

In *In re Estate of Reed,* 236 Kan. 514, 519-20, 693 P.2d 1156 (1985), we discussed the principles and requirements of res judicata as follows:

"The doctrine of res judicata is a bar to a second action upon the same claim, demand or cause of action. It is founded upon the principle that the party, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction. *Penachio v. Walker,* 207 Kan. 54, 57, 483 P.2d 1119

(1971). The salutary rule of res judicata forbids a suitor from twice litigating a claim for relief against the same party. The rule is binding, not only as to every question actually presented, considered and decided, but also to every question which might have been presented and decided. *Hutchinson Nat'l Bank & Trust Co. v. English*, 209 Kan. 127, 130, 495 P.2d 1011 (1972). The doctrine of res judicata prevents the splitting of a single cause of action or claim into two or more suits; it requires that all the grounds or theories upon which a cause of action or claim is founded be asserted in one action or they will be barred in any subsequent action. *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 138, 140, 531 P.2d 435 (1975). This rule is one of public policy. It is to the interest of the state that there be an end to litigation and an end to the hardship on a party being vexed more than once for the same cause. The doctrine of res judicata is, therefore, to be given a liberal application but not applied so rigidly as to defeat the ends of justice. *Wells, Administrator v. Ross*, 204 Kan. 676, 678, 465 P.2d 966 (1970).

"An issue is res judicata when there is a concurrence of four conditions: (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made. *Kumberg v. Kumberg*, 232 Kan. 692, Syl. ¶ 6, 659 P.2d 823 (1983); *Adamson v. Hill*, 202 Kan. 482, 487, 449 P.2d 536 (1969). Application of the doctrine of res judicata is unconcerned with the procedural avenue employed to acquire jurisdiction in a particular tribunal. The doctrine prevents a second assertion of the same claim or cause of action and, regardless of which statute a party uses to proceed to a tribunal, where the same facts, same parties and same issues have previously been litigated before a court of competent jurisdiction which renders a judgment within its competency, the cause of action is barred. *Wirt v. Esrey*, 233 Kan. 300, 308, 662 P.2d 1238 (1983)."

Have the four conditions necessary for res judicata to attach herein been met? We think not.

In the earlier action the plaintiffs sued: (1) the corporation for breach of contract and (2) Davidson on theories of breach of contract and promissory estoppel. In the case before us, the plaintiffs are suing Davidson and Martin as stockholders possessing assets of TCD, against which corporation the plaintiffs have a judgment.

Plaintiffs could not have maintained this action until they had a judgment against the corporation and the execution thereon had been returned unsatisfied. These requirements are set forth in K.S.A. 17-7101(b), which provides:

"No suit shall be brought against any officer, director or stockholder for any debt of a corporation of which he is an officer, director or stockholder,

until judgment be obtained therefor against the corporation and execution thereon returned unsatisfied."

Therefore, the prior action against Davidson on other causes of action does not bar the claim herein.

The judgment is reversed and the case is remanded for further proceedings.