**Ruth DUBOWY, Executrix of the Estate of Fred M. Dubowy, Plaintiff,**

v.

**Chris BAIER and Stephen B. Small, Defendants.**

No. 93–2266–JWL.

United States District Court, D. Kansas.

June 14, 1994.

Alan P. Blinzler, Overland Park, KS, for plaintiff.

Gordon N. Myerson, James P Barton, Jr., Myerson, Monsees & Morrow, William M. Modrcin, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

#### I. Introduction

This case involves claims for malicious prosecution of a civil action and for abuse of process brought by plaintiff against defendants Chris Baier and Stephen B. Small. The matter is currently before the court on defendant Small's motion for summary judgment (Doc. # 45). In his motion, defendant Small seeks summary judgment on the issues of whether probable cause existed for the filing of the quiet title action, whether defendant acted with malice in filing the action, whether plaintiff suffered damages and whether certain assignments executed by the plaintiff's decedent preclude this suit. In her

response, plaintiff makes a cross motion for summary judgment on the probable cause issue. The court finds that plaintiff is entitled to summary judgment on the probable cause issue. The court further finds that issues of material fact exist as to each of the other issues raised in defendant's motion and the motion for summary judgment is, therefore, denied as to those other issues.

## II.  Factual Background

In 1985, defendant Chris Baier purchased an automobile from Metcalf Nissan, Inc. ("Metcalf Nissan"). Metcalf Nissan was a Kansas corporation owned by B.W. Dillon, Inc. ("B.W. Dillon"), which was in turn owned by Fred Dubowy and his son Marc Dubowy. Following his purchase of the automobile, Mr. Baier discovered problems with it and alleged that fraudulent misrepresentations were made to him at the time of sale. On June 17, 1987, defendant Stephen Small, acting as attorney for Mr. Baier, filed a lawsuit in the United States District Court, District of Kansas, against Metcalf Nissan and Metcalf Leasing, Inc. ("Metcalf Leasing"), and others, based upon theories of fraud and misrepresentation.

Shortly thereafter, on July 15, 1988, Metcalf Nissan, Metcalf Leasing, and B.W. Dillon all forfeited their corporate charters in the State of Kansas. On April 19, 1989, Fred Dubowy passed away. Following Mr. Dubowy's death his widow, Ruth Dubowy, was appointed statutory trustee for Metcalf Nissan and Metcalf Leasing. Prior to the forfeiture of the corporate charters, Mr. Dubowy had borrowed more than $700,000.00 from Metcalf Nissan in his capacity as a shareholder and he still owed in excess of $700,-000.00 to the corporation when he passed away. Additionally, prior to the forfeiture Mr. Dubowy had negotiated a sale of the assets of Metcalf Nissan and Metcalf Leasing from which he personally received $100,-000.00 for a non-compete agreement and another $100,000.00 for "assisting" the purchaser.

On August 23, 1989, Ruth Dubowy, as statutory trustee for Metcalf Nissan and Metcalf Leasing, filed an offer of judgment in the federal district court case offering to allow Chris Baier to take a judgment in the amount of $650,000.00 against Metcalf Nissan and Metcalf Leasing. On August 24, 1989, Chris Baier accepted the offer of judgment. At this point in time the two corporations were insolvent. The $650,000.00 figure was reached by the parties in the belief that it would allow Mr. Baier to collect approximately $25,000.00 from the assets of the corporations as his pro rata share when all the interests of the various creditors were factored in.

On October 11, 1989, an estate was established for Fred Dubowy in the Probate Court of Johnson County, Kansas, with Ruth Dubowy serving as executrix. Chris Baier, through his attorney Stephen Small, filed a claim against the estate based upon the $650,000.00 judgment entered in federal court against Metcalf Nissan and Metcalf Leasing, on the theory that because Fred Dubowy had borrowed and owed over $700,-000.00 to the corporations at the time of the forfeiture of the corporate charters, Mr. Dubowy was holding that money as a "statutory trustee" of the corporations, therefore entitling Mr. Baier to pursue assets in the estate to satisfy his judgment against the corporations. Pleadings filed with the probate court showed that the primary, if not the only, assets of the estate were two 50–year ground leases for real property located at 7910 and 7916 Metcalf Avenue, Overland Park, Johnson County, Kansas (the "Leases"). The Leases were subject to Internal Revenue Service tax liens in excess of $230,000.00.

On June 17, 1991, the estate of Fred Dubowy entered into a "Contract for Assignment of Leasehold Estates" with Mike Posten wherein Posten agreed to purchase the Leases for $160,000.00 provided that a number of conditions set forth in the contract were met within 30 days after the execution of the contract itself. Among the conditions was a requirement that the estate provide a commitment for leasehold title insurance prior to the closing date. Mike Posten was acting as an agent for Frank Molle when Posten negotiated and eventually executed the contract on the Leases.

On June 25, 1991, Ruth Dubowy, as executrix of the estate of Fred Dubowy, filed a

petition with the probate court seeking an order allowing the sale of the Leases in accordance with the June 17, 1991 contract entered into with Mike Posten. Chris Baier, through his attorney, Stephen Small, received notice that Ruth Dubowy was seeking permission from the probate court to sell the Leases and that a hearing on the request was scheduled for August 2, 1991. On the day the hearing was scheduled Mr. Baier, through Mr. Small, filed an "Action to Quiet Title to Interest in Land" with the District Court of Johnson County, Kansas. In the action to quiet title, Mr. Baier contended that any value resulting from the sale of the Leases should inure to the benefit of Metcalf Nissan and Metcalf Leasing and that Mr. Baier claimed an interest in the Leases by virtue of his judgment against the corporations.

On September 2, 1991 Ruth Dubowy, as executrix of the estate of Fred Dubowy and statutory trustee for Metcalf Nissan and Metcalf Leasing, filed an answer to the quiet title action. Subsequently, on October 22, 1991, Frank Molle terminated the contract to purchase the Leases. The reasons given for the termination were the failure to obtain an order from the probate court authorizing the sale of the property within the thirty days provided for in the contract and the difficulties that would be encountered in obtaining title insurance given the liens of all the creditors, in particular the IRS.

On May 15, 1992, Ruth Dubowy filed a motion to dismiss the quiet title action filed by Mr. Baier for failure to state a claim upon which relief could be granted. On August 19, 1992, the quiet title action was dismissed on that basis.

Plaintiff in this case claims that defendants maliciously filed the quiet title action without probable cause to do so and that, as a direct and proximate result of the filing of that action, Frank Molle refused to purchase the Leases, thereby causing damages of at least $160,000.00 to the estate of Fred Dubowy. Defendant Small contends that there was probable cause to file the quiet title action and that in any event the filing of the action was not the reason Frank Molle decided not to purchase the Leases. Defendant Small further contends that plaintiff cannot show that any damages occurred and that plaintiff has no standing to sue because the Leases were assigned by Fred Dubowy to his daughter Tina Lenihan prior to Fred Dubowy's death.

### III. Summary Judgment Standards

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

### IV. Discussion

#### A. The Elements

■ In Kansas, a plaintiff must establish the following to recover in an action based upon the malicious prosecution of a civil action: (1) that the defendant initiated, continued or procured civil procedures against the plaintiff; (2) that the defendant in doing so acted without probable cause; (3) that the defendant acted with malice in that he or she acted primarily for a purpose other than that of securing the proper adjudication of the claim upon which the proceedings were based; (4) that the proceedings terminated in favor of the plaintiff; and (5) that the plaintiff sustained damages. *See Hunt v. Dresie,* 241 Kan. 647, 653, 740 P.2d 1046 (1987); *Nelson v. Miller,* 227 Kan. 271, 607 P.2d 438 (1980).

■ The prerequisites of an abuse of process claim under Kansas law are that there must have been an ulterior purpose in the

filing of an action or in the use of whatever process was employed, and, second, that the act was willful and improper. *See Tappen v. Ager,* 599 F.2d 376 (10th Cir.1979). For summary judgment purposes, then, the inquiry is whether there are issues of material fact to be decided by a jury or whether as a matter of law either party is entitled to prevail on any of those elements.

### B. Probable Cause

■ Defendant Small first argues that plaintiff cannot show that he acted without probable cause in filing the quiet title action on behalf of Chris Baier. If he is correct, the plaintiff's action fails. Probable cause for instituting a proceeding exists in Kansas when "there is a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent man in the belief that the party committed the act of which he is complaining." *Nelson,* 227 Kan. at 277, 607 P.2d 438. In cases of malicious prosecution, the inquiry as to want of probable cause is limited to the facts and circumstances as they appeared to defendant at the time the prosecution was commenced. *Id.* If the facts are undisputed, the question of probable cause is one for the court to decide as a matter of law. *Id.; Hunt,* 241 Kan. at 653, 740 P.2d 1046. If the facts tending to establish the existence or want of existence of probable cause are in dispute, it is a question for the trier of fact. *Id.*

■ Defendant Small contends that, based on the applicable facts of which he was aware at the time, he was justified in his belief that he had a valid justification for filing the quiet title action because of his "trust fund doctrine" theory and, therefore, he is entitled to summary judgment on the issue of probable cause. Plaintiff counters that, in fact, based upon the facts of which he was aware at the time, defendant Small had no reasonable grounds for believing that the filing of the quiet title action was proper and therefore plaintiff, as opposed to defendant Small, is entitled to summary judgment on the issue of probable cause.

There is no dispute between the parties concerning the facts that existed and of which defendant Small was aware at the time he filed the quiet title action. Those facts are as follows: (1) Chris Baier had a $650,-000.00 judgment in his favor against Metcalf Nissan and Metcalf Leasing; (2) as of July 15, 1988, both of these corporations had forfeited their corporate charters; (3) until his death, Fred Dubowy was a shareholder of B.W. Dillon, which in turn owned Metcalf Nissan and Metcalf Leasing; (4) prior to his death, Mr. Dubowy had "borrowed" more than $700,000.00 from Metcalf Nissan, but had not repaid any of those loans at the time of his death; and (5) after Fred Dubowy's death, Ruth Dubowy was appointed as statutory trustee for Metcalf Nissan, Inc. and Metcalf Leasing, Inc. It is also not controverted by the parties that at all relevant times, the Leases in question were titled in Fred Dubowy's name individually.

Because there is no dispute between the parties concerning the factual situation existing at the time defendant Small filed the quiet title action, the question that must be answered is whether those existing facts constituted probable cause for defendant Small to file the quiet title action. In other words, did reasonable grounds exist to warrant a cautious or prudent person in the belief that the filing of the quiet title action was proper. *See Nelson,* 227 Kan. at 277, 607 P.2d 438. This court believes they did not.

Defendant Small contends that he had probable cause to file the quiet title action based upon his interpretation of the trust fund doctrine as set forth in *Koch v. United States,* 138 F.2d 850 (10th Cir.1943) and *Carson v. Davidson,* 248 Kan. 543, 808 P.2d 1377 (1991). The trust fund doctrine involves the liability of a shareholder of a dissolved corporation who has received a distribution of assets from the corporation to creditors of the dissolved corporation. The Tenth Circuit Court of Appeals applied the trust fund doctrine to a case arising in Kansas in *Koch v. United States,* 138 F.2d 850 (10th Cir.1943). The *Koch* opinion held:

> Where the assets of a dissolved corporation have been distributed among the stockholders, a creditor of the dissolved corporation may follow such assets as in the nature of a trust fund into the hands of

the stockholders. The creditors have the right to subject such assets to their debts and for that purpose the stockholders hold them as though they were trustees. In other words, the assets of the dissolved corporation are a trust fund against which the corporate creditors have a claim superior to that of the stockholders. A stockholder who receives only a portion of the assets is liable to respond only for that portion. Where the assets coming into the hands of a stockholder suffer a change in value, the creditor must take the trust fund as he finds it, securing the advantage of any increase and suffering any decrease, unless the stockholder is responsible for the decrease. Where the trust property has been used by the stockholder for his own purpose, or disposed of by him, he may be held personally liable for the full value thereof.

Thus, it will be seen that the obligation of the stockholder is to respond as trustee for the property coming into his hands and for any breach of his obligations as trustee with respect thereto. There is no personal liability, except in cases where he has disposed of the trust fund in such a manner that it cannot be followed, or where he has caused a diminution in value of the trust assets.

*Koch,* 138 F.2d at 852.

Despite the Tenth Circuit's ruling in *Koch,* there had remained a degree of uncertainty regarding the adoption of the trust fund doctrine in Kansas until the Kansas Supreme Court's decision in *Carson v. Davidson,* 248 Kan. 543, 548, 808 P.2d 1377 (1991). In *Carson,* the court concluded that the trust fund doctrine was viable in Kansas and summarized the doctrine as follows:

Under the trust fund doctrine the assets of a dissolved corporation are a trust fund against which the corporate creditors have a claim superior to that of the stockholders, and creditors have the right to follow such assets into the hands of stockholders who hold assets as though the stockholders

were trustees. A stockholder of a dissolved corporation receiving assets of a dissolved corporation is liable to respond to a creditor of the corporation only to the extent of the assets so received or the value thereof if the same have been disposed of by the stockholder.

*Carson,* 248 Kan. at 548, 808 P.2d 1377.

Defendant Small, then, contends that the $700,000.00 loan which Fred Dubowy received prior to the dissolution of the companies, which he never repaid, should be treated the same as a distribution to shareholders upon dissolution of a corporation for purposes of application of the trust fund doctrine and that, therefore, Mr. Dubowy held the $700,000.00 in trust for the benefit of the creditors of the corporation. Thus, defendant Small contends, creditors of the corporation, such as Mr. Baier, were entitled to pursue individual assets of Mr. Dubowy to satisfy their judgments against the corporations. This is, in fact, the contention made by Mr. Baier in the claim that he filed against Mr. Dubowy's estate. Although this claim extends the application of the trust fund doctrine from funds received by shareholders at the time of the dissolution of a corporation to funds received by a shareholder in a "loan" transaction prior to dissolution, the court believes, without deciding the issue, that a good faith argument can be made that such an extension could be proper under certain circumstances[1] and, therefore, concludes that probable cause did exist for the filing of Mr. Baier's claim *against the estate.*

Defendant Small proceeds, however, to make a much greater leap of faith to justify his filing of the quiet title action. Defendant Small contends that because the only substantial assets in Mr. Dubowy's estate were the Leases, defendant had probable cause to file the quiet title action based on a belief that the trust fund doctrine conveyed an interest in the leases to Mr. Baier. The court finds that no reasonable grounds existed to warrant a cautious or prudent person in the belief that the trust fund doctrine could

---

1. If, for example, the "loan" transaction were merely an attempt to strip an insolvent corporation of assets in an effort to thwart collection by creditors, the same reasons for the imposition of a constructive trust on such funds would exist as exist when corporate assets are distributed upon dissolution.

create an interest in the Leases on Mr. Baier's behalf or that the filing of the quiet title action was proper.

■ Ordinarily a quiet title action is brought to remove a cloud from the title. *See Ford v. Sewell,* 188 Kan. 767, 771, 366 P.2d 285 (1961). K.S.A. § 60–1002 authorizes one claiming title to or an interest in real property to maintain an action to quiet the title against any person who claims an adverse estate or interest. *See Beams v. Werth,* 200 Kan. 532, 545, 438 P.2d 957 (1968). K.S.A. § 60–1002 provides as follows:

**Quieting or determining title or interest in property.**

(a) *Right of action.* An action may be brought by any person claiming title or interest in personal or real property, including oil and gas leases, mineral or royalty interests, against any person who claims an estate or interest therein adverse to him or her, for the purpose of determining such adverse claim.

■ Thus, in order to properly bring a quiet title action pursuant to the statute, a person must claim "title or interest" in the real property. The real property in question here is the Leases. There is no basis for defendant Small to claim title to the property in Mr. Baier's name for it is undisputed that the Leases were at all times titled in the name of Fred Dubowy personally, and there are no instruments which would purport to bestow title on Mr. Baier. Therefore, the filing of the quiet title action could only be justified if defendant Small reasonably believed that Mr. Baier owned an "interest" in the Leases. The term "interest" in real property is not defined in the statute, nor has there been cited by the parties or discovered by the court in its research any controlling definition in the Kansas cases. Turning then to general sources, Black's Law Dictionary defines "interest" as follows:

The most general term that can be employed to denote a right, claim, title or legal share in something. In its application to lands or things real, it is frequently used in connection with the terms "estate," "right," and "title." More particularly it means a right to have the advantage accruing from anything; any right in the nature of property, but less than title.

Black's Law Dictionary 812 (6th ed. 1990).

In line with this definition, a survey of those cases in which courts have defined the term "interest in real estate" reveals that courts have found the term to mean a discrete, tangible property interest that is something less than outright title to the property. Among property rights that have been found by courts to constitute an interest in real estate are leases, easements, rights to royalties, rights to profits and ownership of mineral rights. *See Words and Phrases,* "Interest in Real Estate" and "Interest in Realty," p. 232–36 (perm ed.). Those Kansas cases which have had occasion to determine whether a party had claim to an interest in real estate have likewise involved situations where the party claimed ownership of a discrete property interest that was something short of full title. *See Shepard v. John Hancock Mut. Life Ins. Co.,* 189 Kan. 125, 368 P.2d 19 (a "royalty" is an interest in property).

In the present case, Mr. Baier simply had no grounds to contend that he possessed a claim to title to the Leases or that he possessed ownership of a claim on the Leases short of full title that would constitute an "interest" in the Leases as that term is commonly defined. Rather, all that Mr. Baier had was a judgment against the corporations which, by application of the trust fund doctrine, defendant Small contends extended to give him the right to collect against personal assets of Mr. Dubowy. However, Mr. Baier lacked even a judgment against Mr. Dubowy personally, vindicating his trust fund theory, let alone any colorable claim to an "interest" in the Leases as that term is commonly defined.[2] Defendant Small cites no authority

---

2. Defendant Small argues in his reply memorandum that under the trust fund doctrine "the stockholder faces personal liability for the full value of those squandered assets and there is no requirement that the corporate creditor have a judgment against the stockholder before collection efforts are undertaken." Defendant Small cites no authority for this proposition and the court does not believe such a conclusion necessarily flows from *Carson* and *Koch,* which are the

that the factual circumstances here create an "interest" in property and his postulation extends way beyond any accepted definition of the term. Defendant Small may very well have had grounds to file a claim against the estate based on his trust fund doctrine theory. However, the court finds that no reasonable grounds existed for defendant Small to believe he was entitled to file the quiet title action. There were simply no grounds to believe that Mr. Baier had an "interest" in the leases as that term is commonly defined. Accordingly, the court finds that defendant Small had no probable cause to believe that his filing of the quiet title action was proper and plaintiff is entitled to summary judgment on that issue.

### C. Malice

■ Defendant Small next argues that he is entitled to summary judgment because in filing the quiet title action he did not act with malice, an essential element of a malicious prosecution action. Malice is not restricted to the personal hatred, spite or revenge of the one who institutes the action. It is enough if the prior action was instituted for any improper or wrongful motive. *Nelson v. Miller*, 227 Kan. 271, 278, 607 P.2d 438 (1980). Defendant Small's basic contention on the malice issue is that he did not act with improper purpose in filing the quiet title action because he had probable cause to file such action under his interpretation of the trust fund doctrine. As discussed above, the court has determined as a matter of law that probable cause to file such an action did not exist. Further, plaintiff has produced evidence that statements were made by defendant Small indicating that an improper purpose did motivate his filing of the quiet title action. The court finds that questions of material fact remain as to the malice issue. It will be for the jury to determine whether defendant Small filed the quiet title action in an honest, though erroneous, belief that he had valid grounds to file such an action or

whether defendant Small filed the quiet title action for an improper purpose.

### D. "No Damages" Arguments

■ Defendant Small next claims that plaintiff suffered no damages from the filing of the quiet title action and thus cannot make a claim. Defendant Small first produces an affidavit from Frank Molle indicating that his decision not to purchase the Leases was based "solely on financial and business reasons only and was in no way, either directly or indirectly, affected and/or influenced in any respect by the quiet title action filed by Chris Baier ..." Defendant argues this conclusively shows that the filing of the quiet title action had no effect on Mr. Molle's decision not to follow through on the purchase contract for the Leases. However, as plaintiff points out in her response, the issue is not why Mr. Molle eventually decided to cancel his agreement to purchase the Leases from the estate on October 22, 1991, but whether the purchase would have occurred earlier but for the filing of the quiet title action by defendant Small almost three months before. Plaintiff has produced evidence that the sale was frustrated by the filing of the quiet title action. The court therefore concludes that questions of material fact remain as to this issue and summary judgment is not proper.

■ Defendant Small also argues that the estate was not damaged by frustration of the sale because the monies it would have received from the sale would have all gone to the IRS to pay off tax liens on the Leases. Defendant Small cites no authority for this proposition and the court finds no merit to defendant's argument. Any money received by the estate from the sale presumably would have been used for the purpose of reducing debts of the estate. Such a reduction of debt would have been a benefit to the estate and denial of that reduction constitutes a proper element of damages.[3]

---

cases cited by defendant in support of his trust fund doctrine theory.

**3.** Additionally, plaintiff includes a claim for damages incurred by plaintiff for expenses and attorneys' fees in defending the quiet title action.

Such damages are properly allowable in malicious prosecution actions and the court finds such damages alone would allow plaintiff to proceed on the damages issue. *See Nelson v. Miller*, 227 Kan. 271, 282, 607 P.2d 438 (1980).

### E. The Assignments

Finally, defendant Small argues that, prior to his death, Mr. Dubowy executed assignments which effectively transferred all his rights, title, and interests in the Leases to his daughter, Tina Lenihan, and that, therefore, the Leases did not belong to Fred Dubowy at the time of his death and the estate had no authority to enter into negotiations with Frank Molle or anyone else for the sale of the leases. Fred Dubowy did execute two documents entitled "Assignment of Leases" which purported to assign Mr. Dubowy's interest in the leases to Tina Lenihan. However, plaintiff has produced evidence that no consideration was ever given by Tina Lenihan for the assignment and that the assignment was never delivered to her. Because there was no consideration, the assignment must be considered as a gift. To establish a gift there must be an intention to make a gift; delivery by the donor to the donee; and an acceptance by the donee. *See Herman v. Goetz,* 204 Kan. 91, 96, 460 P.2d 554 (1969). Defendant Small has produced no evidence to contradict plaintiff's showing that the assignment was never delivered to or accepted by Tina Lenihan. Defendant Small's summary judgment motion is denied on this issue as well.

### V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant Small's motion for summary judgment (Doc. # 45) is denied. Plaintiff is granted summary judgment on the probable cause issue. This case will proceed to jury trial beginning July 12, 1994.

**IT IS SO ORDERED.**